Argued November 22, reversed and remanded December 9, 1974,
reconsideration denied January 15, petition for review
denied February 19, 1975

# STATE OF OREGON, *Appellant, v.* WALLACE FRANKLIN MARSDEN, TERRELL DWAINE MOORE, RICHARD LEON CASSIDY (No. 43429), *Respondents.*

528 P2d 1066

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Scott Mc-Alister, Assistant Attorney General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

The state appeals from an order suppressing evidence consisting of a revolver and ammunition, narcotics paraphernalia, marihuana and a large quantity of amphetamine pills which were seized by the police. ORS 138.060 (3). This case has been consolidated for briefing and argument on appeal with *State v. Behrens, Yeaman,* 19 Or App 759, 528 P2d 1069 (1974). The facts in evidence upon which the order was based are:

On January 27, 1974 state police in Roseburg communicated with police in Albany that a green Toyota fastback sedan with damage to the right rear fender had been reported to them by an anonymous caller in Roseburg as being en route from Roseburg to Albany on Highway I-5. The caller had stated that the vehicle had three male occupants, the two passengers being a Marsden and a Cassidy; that Cassidy had a .38 caliber pistol; that the vehicle would exit I-5 at Highway 20 and proceed to a location in Albany unknown to the caller where purchases of marihuana

and amphetamines would be made and that the vehicle would then return to Roseburg by the same route. The caller had stated that the vehicle should arrive at Albany about 6 p.m.

An Oregon state policeman on I-5 at about the indicated time radioed that an automobile exactly answering the caller's description was en route on Highway I-5 toward Albany, and that its license number checked out as a Roseburg vehicle. Police stationed at Highway 20 observed the vehicle exit and proceed into Albany. It stopped first at a small grocery store where the driver and one passenger went inside for about five minutes and then came back out of the market without packages. The vehicle proceeded to a residence at 1590 South Sherman Street in Albany and all three subjects went into the residence where they stayed for about 45 minutes and then emerged and proceeded away in the Toyota by the same route on which they had come. While the suspects were inside, the police ran a quick check on the residence and learned it was occupied by a Kathy Behrens who had previously been convicted of criminal activity in drugs, and was presently on probation therefor.

Police stopped the Toyota short of the return entrance onto Highway I-5. They surrounded it with drawn guns and ordered the occupants out with their hands over their heads. The Toyota's doors were left open as the occupants exited and a police officer observed a pistol on the floor in the right front passenger area. This officer went to the vehicle, picked up the weapon and saw that it was a .38 caliber revolver. Because he had observed one of the occupants make a movement toward the floor under the front seat as the vehicle was being stopped, the officer believed another

weapon might have been secreted there and thus made a check which resulted in the discovery of not a weapon but amphetamines. He saw a "hash" pipe below the glove compartment. Both marihuana and amphetamine tablets were also seen in an open box on the rear seat of the car. Further search turned up more narcotics and narcotics paraphernalia, all of which were seized.

The trial court sustained the motion to suppress upon the reasoning of *State v. Leo,* 4 Or App 543, 480 P2d 456 (1971). In that case an anonymous informant called to say that Cal Leo had marihuana at a given address in Corvallis and that he was cutting it at that time in the kitchen. A check of the address by the police showed that, although the residence was listed in the city directory to another name, a vehicle registered to Carl H. Leo was parked in front of it. A check of student registrations showed Carl H. Leo to be a student at Oregon State University. The question in *Leo* was whether there had been sufficient corroboration of the anonymous information to indicate it was reliable and thus a basis for the probable cause needed to support the issuance of a warrant for the search. We held that there was not in fact enough corroboration in that case.

*State v. Penney,* 242 Or 470, 410 P2d 226 (1966), was a case where police had been watching a house for over a month and had known that narcotics users frequented the place. An informant told them that defendant, living therein, had narcotics in his possession and would be leaving the house to make a delivery. Police watched the premises after this information was received and observed defendant come out of the house with a brown paper sack in his hand,

glance up and down the street, put the sack inside his shirt, get into an automobile and drive away. They stopped him and seized the sack, which contained narcotics. In the course of the court's opinion it said:

"* * * While the officers testified they made the arrest at the time that they did because of a tip from an informer, the arrest was not made until by their own observance they determined that in all probability the informer's information was reliable * * *.

"* * * * * *.

"* * * [S]hould it be necessary to ground this opinion on the basis that the officers did not have 'probable cause' or 'reasonable grounds' for the arrest and search without the informer's tip, then it is clear that the officers prior to the arrest and search corroborated the veracity of the informer through their own observance of the actions of the defendant." 242 Or at 475-77.

We consider the case at bar on its facts to be much closer to *Penney* than it is to *Leo* because the police had more corroborating facts within their knowledge in this case, like in *Penney*, than was the case in *Leo*. In *Leo* only one fact was really corroborated: A vehicle in front of the suspected house was registered to a Leo, with a similar but not the same first name. In the case at bar, as in *Penney*, there was substantially more corroboration. First, the anonymous informant in Roseburg accurately described an automobile, and its occupants, which was already en route from Roseburg to Albany and which checked out when observed en route by a police officer who relayed that information to the waiting officers. Second, the subject vehicle exited at exactly the place where the informant said it would. Third, although it stopped momentarily at a small grocery store, it made a stop

which lasted long enough to make the kind of purchase about which the informant was talking before it started back by exactly the same route, as the informer said it would. Fourth, a check of the last address at which it stopped disclosed that to be the address of a known drug user.

■ Each case must be decided upon its own facts. We think the facts at bar were such as would convince any reasonable thinking person that the information from the anonymous informant was accurate. That being so, there was then probable cause for a reasonable thinking person to believe that narcotics would be in the possession of the defendants when the police arrested them. Inasmuch as the corroboration unfolded and was complete at a point where the defendants were leaving in a vehicle with what probably was evidence of crime, there was an exigent circumstance which avoided the need to take the time to get a warrant.

■■ The defendants contend that there was no justification for the group of arresting police officers to make the arrest with drawn guns as they did. There is no question but that it was an arrest at that point. The police officers already had corroboration for everything else that the anonymous informant had told them about. Therefore, it was only reasonable for them to believe that the defendants were armed with a .38 caliber revolver, as the informant had indicated. It was safer for the defendants as well as the officers to apprehend them with the overwhelming show of force which was used than with half measures which could have resulted in shooting and casualties on either or both sides. In *State v. Riley,* 240 Or 521, 402 P2d 741 (1965), the court said:

"* * * To justify the seizure of a weapon which

could be used against the arresting officer we shall not draw a fine line measuring the possible risk to the officer's safety. The officer should be permitted to take every reasonable precaution to safeguard his life in the process of making the arrest." 240 Or at 524-25.

See also, both with respect to the reliability of the anonymous information and the method of arrest of defendants and seizure of the revolver, the majority opinion in *Adams v. Williams,* 407 US 143, 92 S Ct 1921, 32 L Ed 2d 612 (1972).[①] We hold that the arrest

---

[①]

"* * * [W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations * * * the subtleties of the hearsay rule should not thwart an appropriate police response.

"* * * * *.

"Once Sgt. Connolly had found the gun precisely where the informant had predicted, probable cause existed to arrest Williams for unlawful possession of the weapon. Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' *Beck* v. *Ohio,* 379 U. S. 89, 91 (1964). In the present case the policeman found Williams in possession of a gun in precisely the place predicted by the informant. This tended to corroborate the reliability of the informant's further report of narcotics and, together with the surrounding circumstances, certainly suggested no lawful explanation for possession of the gun. Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. See *Draper* v. *United States,* 358 U. S. 307, 311-312 (1959). Rather, the court will evaluate generally the circum-

of the defendants was made with probable cause. The seizure of the pistol and the other contraband which followed in the course of making the arrest was based upon what was visible, with the possible exception of the amphetamines under the seat, and what was visible as well as the need to look for other weapons led to looking there. The seizure was of contraband and it was reasonable.

Reversed and remanded.

---

stances at the time of the arrest to decide if the officer had probable cause for his action:

" 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar* v. *United States,* 338 U. S. 160, 175 (1949) * * *." (Brackets theirs.) Adams v. Williams, 407 US 143, 147-149, 92 S Ct 1921, 32 L Ed 2d 612 (1972).