Argued July 21, reversed and remanded August 16, reconsideration denied
September 22, petition for review denied October 12, 1976

# STATE OF OREGON, *Appellant,*
## *v.*
# ROBERT ARTHUR DELKER, *Respondent.*
## (No. C 75-10-3461 Cr, CA 5555)

552 P2d 1313

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Burgess, Assistant Attorney General, Salem.

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

The state appeals from an order suppressing evidence and dismissing the indictment of defendant, a postal employe, for possession of gambling records. ORS 167.137.

The crucial issue is the sufficiency of the affidavit on which the warrant for the search of defendant's apartment was issued. The search resulted in the seizure of the gambling records involved.

The trial court found that the affidavit was defective "in that the confidential informant was not reliable," and that therefore the magistrate erred in issuing the search warrant.

The challenged affidavit purported to be based on the following: (1) knowledge that the affiant, Officer Pahlke, had gained in previous bookmaking investigations, (2) FBI reports and discussions with other law enforcement officers concerning the manner in which sports bookmaking operations are conducted, (3) information given Officer Pahlke by a confidential informant, and (4) information given Pahlke by postal inspectors who had been observing defendant's actions at the post office where defendant worked.

In the interest of conserving space we will not set out the lengthy and detailed affidavit. Instead we will summarize it.

Officer Pahlke begins his affidavit by describing in considerable detail how a bookmaking operation is conducted and the extensive use of the telephone therein. He then details the information given him by the anonymous informant, including: where defendant lived, his working hours at the post office and his days off; that defendant had been working for Al Kay, a bookie well known to Portland police; that defendant had approximately 14 people working for him at the post office picking up and turning in bets; defendant's "take" per bet; that as recently as 10 days before the challenged search defendant was still taking bets on

baseball and football; and that defendant keeps his betting records on his person, in his automobile and at his residence.

Next, Officer Pahlke details his discussions with the postal inspectors to verify the information previously received from the anonymous informant, averring that

"* * * all of the above information concerning the activities, employment, days off, etc. were verified one hundred per cent. It is even noted that past supervisors of * * * [defendant] had suspected him of taking book. * * * [Defendant] had been told at work that he could no longer answer the telephone because he was receiving so many phone calls and taking time to write down notations on pieces of paper while receiving these same phone calls * * *."

Pahlke relates further information given to him by postal inspectors who had defendant under surveillance at work:

"* * * [They] noticed * * * [defendant] exchange U. S. Currency with one white male * * * approximately 10 pm in the evening on 7/8/75. * * * [D]ue to * * * [defendant's] job it would be very difficult for him to do any hand to hand exchanges, etc. while sitting at his letter-sorting machine. * * * [Defendant] in fact does most of his bookmaking activities before and after the work shift begins and ends * * *."

The affiant describes the informant as: (1) over 21; (2) an Oregon resident "for years"; (3) "gainfully employed in Multnomah County for the past ten years, two years * * * [with] the same employer"; (4) having paid his taxes and having "voted in recent local and state elections"; (5) "has no indictments or arrest warrants pending against" him; (6) having provided reliable information "on at least" four prior occasions; and (7) desirous of remaining anonymous because of fear of possible "physical or mental pressure, humiliation or ridicule."

■ The methodology to be employed in determining the sufficiency of an affidavit based on information the

affiant received from an informant was set out in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and further explained in *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). These cases hold that the affidavit must establish (1) the credibility of the informant and (2) that the informant obtained his information in a reliable way.

■  Where the person supplying the information to the affiant is a named police officer or a named citizen such as the victim of the crime under investigation, the credibility of the informant is essentially assumed. *State v. Poteet,* 9 Or App 231, 495 P2d 783, Sup Ct *review denied* (1972). The rationale of this assumption is this: that by revealing his name, the informant opens himself up to the possibility of being called as a witness, *State v. Poteet, supra.*

■  Where the informant is anonymous his credibility must be established in the affidavit itself. This is often done by the affiant stating that this informant has given information in the past which has led to arrests and convictions.

■■  Here the affidavit of Officer Pahlke states that the informant is a "reliable citizen informant" but does not disclose his identity. In such a situation we believe that the credibility of the informant must be established just as if the informant were a paid informer. The crucial factor is that the informant has chosen to remain anonymous. *State v. Poteet, supra.* A naked assertion by the affiant that the informant is a "reliable citizen" is of no help in evaluating his credibility. Neither are the statements of the affiant regarding the informant's employment, voting and taxpaying status, etc., sufficient.

■■  The affidavit does state that the informant gave "information on at least four prior occasions which information proved to be reliable in all respects," but it does not indicate what type of information the informant gave in the past or whether it led to arrests and convictions.

[ 501 ]

The affidavit in question here does, however, meet the credibility prong of *Aguilar* because of the highly detailed information contained and because many of the facts supplied by the informant were substantiated by other sources. For instance, the affidavit states that the affiant checked with postal authorities and that the information the informant gave regarding defendant's hours of employment, days off, address and suspicious actions while at work, were all verified. While these details concern mostly nonincriminating facts, this alone does not render them worthless for the purpose of establishing the informant's reliability. *See, Draper v. United States,* 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959). Further, as noted earlier, other incriminating evidence was received from postal authorities from which a magistrate could properly infer that the informant had related the truth to the affiant.

■■ As to the other prong of *Aguilar,* defendant contends that the affidavit is insufficient in that it does not reveal how the informant obtained his information. While it is desirable that the affidavit establish this, it is not necessary if the affidavit reveals sufficient details, some of which are substantiated by other sources. Where this is so, the issuing magistrate may properly infer that the informant obtained his information in a reliable way. *Spinelli v. United States, supra; Draper v. United States, supra; State v. Hodge,* 11 Or App 525, 504 P2d 143 (1972). The facts set out in the discussion above establishing the informant's credibility likewise indicate that he obtained the information in a reliable way.

As we held in *State v. Marsden, Moore, Cassidy,* 19 Or App 742, 528 P2d 1066 (1974), Sup Ct *review denied* (1975), which involved a long distance telephone tip from an anonymous informant in another city, once the police corroborated the information received from the anonymous informant they had probable cause to believe that narcotics were in possession of defendants and to stop and arrest defendants for such possession.

We said:

> "Each case must be decided upon its own facts. We think the facts at bar were such as would convince any reasonable thinking person that the information from the anonymous informant was accurate. That being so, there was then probable cause for a reasonable thinking person to believe that narcotics would be in the possession of the defendants when the police arrested them. * * *" 19 Or App at 747.

Defendant also contends that the state's appeal should be dismissed on the ground that it was not timely brought. Defendant's argument is that the appeal period should begin to run as of the time the trial judge orally announced his order rather than from the time the order was filed with the clerk. The rule is contrary to defendant's contention. In *Charco, Inc. v. Cohn,* 242 Or 566, 411 P2d 264 (1966), our Supreme Court stated that an order is not effective until filed with the court clerk. The order not being final and effective until filed, the appeal period should not begin running until that time.

Reversed and remanded for trial.