*[785]
 
 TANZER, J.
 

 Defendant appeals his conviction of criminal activity in drugs, ORS 167.207, for possession of heroin and bringing heroin into a jail. His principal assignment of error is the denial of his motion to suppress evidence based on his assertion that the officer who stopped him in the jail had no reasonable suspicion that he possessed heroin and that the subsequent search was conducted without probable cause.
 

 At approximately 1:30 p.m. on November 26,1976, the date of the arrest, Deputy Sheriff McDade received information from an informant that defendant was supplying heroin to certain inmates of Rocky Butte Jail. McDade testified that the informant told him defendant’s name, that defendant was a drug counselor at Alpha House and had passed heroin to certain inmates during unsupervised visits in the jail, that the inmates swallowed the balloons of heroin and recovered them later in their cells, that defendant had passed heroin to two named inmates earlier in the week, that defendant carried the heroin in his pocket, and that he would be making another delivery that afternoon. The informant also reported to McDade that heroin was being transported into the jail by a minister as well as inside of clothing provided to the inmates by outside parties.
 

 McDade had never before used any information from this informant, but he regarded the information as reliable because of the informant’s awareness of narcotics activity in the jail with which McDade was familiar. Two other persons had previously informed McDade that the same minister was bringing narcotics into the jail, and he personally had intercepted articles of clothing in which narcotics had been hidden. He knew that one of the inmates named by the informant as recipients of heroin from defendant was in the jail, and he confirmed the presence of the other. He confirmed that drug counselors had unsupervised visits with inmates and that defendant was a drug
 
 *[786]
 
 counselor at Alpha House as the informant had reported and that defendant had prior convictions for narcotics activity.
 

 Acting on the informant’s tip as corroborated, McDade asked the corrections officers at the jail to notify him immediately if defendant came to make counseling visits that day and not to allow defendant to make the visits until he, McDade, arrived. Defendant arrived at the jail that afternoon. McDade arrived shortly thereafter with Sergeant Fessler, also from the sheriff’s office.
 

 McDade and Fessler approached defendant in the jail’s receiving center, introduced themselves, and showed defendant their identification. McDade told defendant that he wished to talk with him. Defendant agreed and placed some papers on a nearby counter. McDade told defendant he wanted to talk in the interview room, which was about 20 or 30 feet away. He directed defendant by placing his hand on defendant’s arm; defendant shook off the hand and said, "Don’t grab me,” or something to that effect. McDade replied, "Okay. Just make sure that you keep your hands away from your pockets where I can see them.”
 

 According to McDade, as he and defendant entered the interview room, McDade saw defendant reach into his pocket with his right hand and then bring his closed fist up to his mouth. Suspecting that defendant was trying to swallow a balloon of heroin, McDade grabbed his arm. A struggle followed. Defendant bit McDade’s finger while McDade was attempting to search his mouth. Sergeant Fessler grabbed defendant’s other arm. Defendant dropped to his knees and McDade took hold of defendant’s neck to prevent him from swallowing. McDade then saw defendant’s hand move, and something flew out from the direction of his hand and landed on the floor. McDade recovered it and found it was a red balloon containing a brown powder later identified as heroin. Defendant was then placed under arrest and searched.
 

 
 *[787]
 
 The state bears the burden of proving the validity of a warrantless search like the one in this case. ORS 133.693(4).
 

 As a general proposition of constitutional law, official knowledge needed to justify a search or seizure varies relative to the intensity of the invasion of privacy and the gravity of the police purpose to be served.
 
 State v. Evans,
 
 16 Or App 189, 194, 517 P2d 1225
 
 rev den
 
 (1974);
 
 see, Terry v. Ohio,
 
 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). By statute, an officer who reasonably suspects,
 
 [1]
 
 based on articulable facts, that a person has committed a crime may stop the person and make a reasonable inquiry after identifying himself as a police officer. ORS 131.615(1).
 
 State v. Valdez,
 
 277 Or 621, 561 P2d 1006 (1977).
 

 Officer McDade’s initial encounter with defendant, in which he identified himself, showed his badge, and asked to speak with defendant, was a temporary restraint on defendant’s liberty and therefore a "stop” under ORS 131.605(5).
 
 [2]
 
 An informant’s tip, parts of which are extrinsically corroborated, may be adequate to establish a reasonable basis for suspicion.
 
 See, Adams v. Williams,
 
 407 US 143, 92 S Ct 1921, 32 L Ed 2d 612 (1972) (reasonable suspicion based on informant’s tip);
 
 cf., Draper v. United States,
 
 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959),
 
 State v. Marsen, Moore, Cassidy,
 
 19 Or App 742, 528 P2d 1066
 
 rev den
 
 (1974) (probable cause based on informant’s tip plus corroboration by observation).
 

 Officer McDade’s direction to defendant to keep his hands away from his pockets was the minimum step
 
 *[788]
 
 necessary to prevent destruction of potential evidence during the inquiry. McDade’s informant had reported that defendant would be carrying the balloon of heroin in his pocket. McDade did not frisk defendant, but merely instructed him to keep his hand out of a pocket which he reasonably suspected was used to contain heroin. This minimal restraint on defendant’s liberty was a reasonable part of the investigatory stop in light of the knowledge of the officer at the time and the purpose of the stop.
 

 The validity of the search of defendant after the sudden movement of his hand into his pocket and then toward his mouth depends on whether there was probable cause to believe defendant was in possession of heroin. An untested informant’s report may be sufficiently corroborated by information otherwise known to the officer or by unfolding circumstances which are consistent with the information, to rise to the constitutional magnitude of probable cause.
 
 Draper v. United States, supra; State v. Penney,
 
 242 Or 270, 410 P2d 226 (1966);
 
 State v. Marsden, Moore, Cassidy, supra.
 
 In the context of a drug investigation, a movement of the hand to the pocket or any other act directed toward destruction or concealment of a small article is a meaningful circumstance in the determination of the existence of probable cause.
 
 State v. Muckleroy,
 
 26 Or App 179, 552 P2d 257
 
 rev den
 
 (1976);
 
 State v. Jones,
 
 9 Or App 629, 498 P2d 390 (1972).
 

 Assuming for argument that at the time of defendant’s visit the information known to McDade amounted to more than reasonable suspicion but less than probable cause on the constitutional spectrum, defendant’s acts of reaching in his pocket and then to his mouth are a sufficient corroborative circumstance to elevate reasonable suspicion to probable cause and therefore to justify a full-scale search and seizure.
 

 Finally, defendant’s sudden movement created an immediate danger that evidence would be destroyed. This danger required the officers to act immediately
 
 *[789]
 
 and constituted exigent circumstances which justified the search without a warrant.
 
 State v. Murphy,
 
 3 Or App 82, 471 P2d 863 (1970).
 

 The motion to suppress evidence was properly-denied. Defendant’s other assignments of error are not well taken and do not require discussion.
 

 Affirmed.
 

 [1]
 

 ORS 131.605(4) provides:
 

 "As used in OES 131.605 to 131.625, unless the context requires otherwise:
 

 * * sfc *
 

 "(4) 'Reasonably suspects’ means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625.”
 

 [2]
 

 "A 'stop’ is a temporary restraint of a person’s liberty by a peace officer lawfully present in any place.” ORS 131.605(5).