Argued and submitted February 15, reversed March 24, 1980

STATE OF OREGON,
*Appellant,*
*v.*
ANTONIO CASTENEDA MORENO,
*Respondent.*
(No. C78-10-17640, CA 13418)
608 P2d 611

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, Salem.

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

[489]

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

The state appeals pursuant to ORS 138.060[1] from an order made prior to trial suppressing evidence seized in a warrantless search of defendant at the Portland International Airport on the ground that the officer had no probale cause to search. We reverse.

Early in the morning of October 27, 1978, Officer Neal Gearheart, a member of the Narcotics Detail of the Portland Police Bureau, received information from a reliable informant.[2] Gearheart was told that one "Oscar", a Mexican male, 5 feet 5 inches tall, 125 pounds, 23 years of age, with a light mustache and chin whiskers would be arriving that day from Los Angeles at the Portland International Airport. "Oscar" would be accompanied by "Steve", a Mexican male, 25 to 26 years of age with dark hair, ruddy complexion, and a pock-marked appearance. Steve was reported to be somewhat taller than "Oscar".

The informant said "Oscar" would be in possession of heroin.

The reliable informant also indicated that "Oscar" operated an early model 1970-1971 Buick bearing Oregon license plate CEY 789. The informant indicated that "Oscar's" address was 4125 S. E. 72nd in Portland. Officer Gearheart drove to the vicinity of S. E. 72nd Avenue and S. E. Boise Streets and observed a 1971 Buick bearing the same license number.

---

[1] ORS 138.060 provides:

"The state may take an appeal from the circuit court or the district court to the Court of Appeals from:

"(1) An order made prior to trial dismissing or setting aside the accusatory instrument;

"(2) An order arresting the judgment;

"(3) An order made prior to trial suppressing evidence; or

"(4) An order made prior to trial for the return or restoration of things seized."

[2] The trial court concluded that the informant was reliable and defendant has not cross appealed from this determination.

After receiving the report from the reliable inform-
ant, Officer Gearheart determined that positive iden-
tification of "Oscar" was not possible. However,
Gearheart had conversations with other informants
relative to activities of "Oscar" and was advised that
"Oscar" did a considerable amount of business in the
lower Burnside - Skid Row area of Portland.

Later on the morning of October 27, 1978, the 1971
Green Buick was personally observed by Officer
Gearheart in the long-term parking lot just east of the
terminal at Portland International Airport. Inasmuch
as the informant was uncertain as to the specific air
carrier or the time at which "Oscar" and "Steve" would
arrive at the airport, the police maintained surveil-
lance on October 27 from approximately 8:30 a. m.
until approximately 4:01 p.m., when United Airlines
Flight 220, a direct flight from Los Angeles, arrived at
Portland International.

While observing the passengers debark from
United Flight 220, Gearheart observed defendant and
one Steven Rodriques. Both fit the description given
by the informant. Defendant and Steven Rodriques
were followed from the terminal to the parking lot
where defendant approached, entered and started the
1971 Buick. At this time a marked police car pulled
into the path of defendant's automobile and defendant
was approached by Gearheart and three other officers.
Defendant was advised of his constitutional rights and
told that he was going to be searched for heroin.
Gearheart said he would begin by searching defend-
ant's pockets and, as he reached for defendant's upper
shirt pocket, defendant said the "dope" was in his
trouser pocket. A quantity of heroin approximately
twice the size of a golf ball and wrapped in a plastic
wrap was seized from defendant's front pants pocket.

The trial judge found, *inter alia*, that:

"[1] Officer Gearheart did not know how the
informant had obtained his information.

"[2] Although Officer Gearheart was able to
verify by independent observation a number of

details given him by the informant, these verified details in themselves did not indicate that the defendant possessed heroin.

"[3] No basis for [the] informant's knowledge that defendant would return to Portland with heroin in his possession was communicated to Officer Gearheart."

Based upon these factors, the trial judge concluded that the police did not have probable cause to search defendant when he arrived from Los Angeles.

We disagree. The benchmark for any inquiry in this area is *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964). There the United States Supreme Court, while acknowledging that probable cause could be based upon information obtained from an unidentified informant, instructed that,

"\* \* \* the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, \* \* \* was "credible" or his information "reliable". *Id.*, 378 US at 114-115.

As noted in fn 2, *supra*, it is only the reliability of the *information received*, and not the informant, which is at issue here. Concerning the detail required to establish the reliability of confidential information, the Supreme Court has said,

"The detail provided by the informant in *Draper v. United States*, 358 US 307, 79 S Ct 329, 3 L Ed 327 (1959) provides a suitable benchmark. While Hereford, the Government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that

the informant had gained his information in a reliable way." *Spinelli v. United States*, 393 US 410, 416-417, 89 S Ct 584, 21 L Ed 2d 637 (1969) (footnote omitted).

Taking *Draper* as our "benchmark", as *Spinelli* indicates we may do, we find more facts here than in *Draper* to justify the search. In addition to facts which almost precisely parallel *Draper* with respect to the breadth of detail provided by the informant concerning the defendant, this case contains the added fact of the informant's knowledge concerning defendant's car. By the time the officers saw the two persons who had previously been described to them arrive and go to the very car the informant said belonged to one of them, enter it and start to drive away, the officers were more than justified in concluding that "the informant had gained his information in a reliable way." *Spinelli v. United States, supra.* Even without this fact, however, the wealth of detail supplied by the informant would probably compel us to reach the same result. *Ibid.; see also State v. Hollman*, 251 Or 416, 446 P2d 117 (1968); *State v. Delker*, 26 Or App 497, 552 P2d 1313 (1976).

The order of the trial court suppressing evidence seized from the defendant is reversed, and the case is remanded for trial.