Submitted on remand from the Oregon Supreme Court April 3, affirmed June 6, reconsideration denied July 27, petition for review denied August 21, 1984 (297 Or 601)

# STATE OF OREGON,
*Appellant,*

*v.*

# JIM SHANNON GREEN,
*Respondent.*

## (81-13444; CA A26987)

684 P2d 575

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Merrill Schneider, Sandy, argued the cause for respondent. With him on the brief was Patrick M. Birmingham, Sandy.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

Warden, J., specially concurring.

## GILLETTE, P. J.

The state appeals a trial court order suppressing evidence of defendant's refusal to take field sobriety tests from use in his trial for driving while under the influence of intoxicants. We dismissed the appeal for failure to serve the trial court clerk within the required period. *State v. Green,* 66 Or App 968, 675 P2d 1113 (1984). The Supreme Court reversed and remanded the case to us. *State v. Green,* 296 Or 711, 678 P2d 267 (1984). We now deny defendant's motion to dismiss for failure to file the appeal in a timely fashion and affirm the order of suppression.

■ The trial court orally granted defendant's motion to suppress on November 5, 1982, but did not sign the order suppressing until December 6, 1982. On that date, the District Court clerk's office received the order, and one of its employes called both attorneys to notify them of it. Because of delays caused by the inner workings of the clerk's office, the order was not actually stamped "filed" until December 14, 1982. The state filed its notice of appeal on January 13, 1983, which was timely if the appeal period began running on December 14, 1982, but was late if, as defendant urges, it began running on December 6, 1982. Defendant relies on cases holding that a document is "filed" with the clerk when the clerk actually receives it for filing, *Vandermeer v. Pacific N. W. Develop.,* 274 Or 221, 545 P2d 868 (1976); *In re Wagner's Estate,* 182 Or 340, 187 P2d 669 (1947), arguing that the time to take an appeal began when the order was "filed" as defined in those cases. Although defendant's position on the meaning of "filed" is correct, it does not resolve the issue. In *Blackledge v. Harrington,* 289 Or 139, 611 P2d 292 (1980), the Supreme Court noted that ORS 19.026(1), governing appeals in civil cases, requires the notice of appeal to be filed within 30 days from the "entry" of the judgment and that "entry" is a different act from "filing." It held that entry in the journal, not filing in the clerk's office, was the act which began the running of the appeal time. 289 Or at 142-43.

ORS 138.071(1), which governs criminal appeals, allows the notice of appeal to be filed at any time after verdict, but no more than 30 days "after the judgment or order appealed from was *given or made.*" (Emphasis supplied.) It thus does not distinguish between the filing and the entry of

the order, but instead uses terms that have no other procedural referents. ORS 138.071(2)(a) extends the time for an appeal to 30 days after the "entry" of an order disposing of a new trial motion. However, "entry" does not have the clear meaning in the criminal context that it does in the civil, because there is no statutorily required journal in which orders are to be entered.

It is not unreasonable to construe "given or made" to be identical to "filed," as defendant would have us do, but we do not think that that is the appropriate construction. The legislature could have used the precise term if that had been its intention. It is important to have a clear, objective point for the parties' reference, particularly because many appeals, both by the state and by defendants, are handled by attorneys who had no involvement with the case at the trial level. Although an order or judgment is filed, and for most purposes is effective, when the clerk receives it, it is not then readily available to the public or to the parties. That availability occurs only when it is stamped "filed." We hold that an order or judgment is "given or made" on the date of that act, and the state's appeal in this case was therefore timely. We turn to the merits.

An officer found defendant at the scene of a one car accident in circumstances that indicated that he had been the driver of the vehicle and that he was under the influence of alcohol. The officer asked defendant to perform standard field sobriety tests, but he refused. He refused again after the officer told him that the reason for the tests was to determine his condition. The officer then arrested him.

The trial court suppressed various statements defendant made during the officer's investigation and also suppressed the fact that he had refused to take the field sobriety tests, holding that the fact of the refusal was derivative of defendant's statement refusing and that its use would therefore violate his *Miranda* rights. The state concedes the suppression of defendant's statments under *State v. Roberti*, 293 Or 236, 646 P2d 1341,(1982), *cert pending,* but appeals the suppression of the fact that defendant refused to take the field sobriety tests. It argues that the mere fact of refusal is not testimonial and that evidence of it would thus not violate defendant's constitutional right not to be required to give

testimony against himself. Because evidence of defendant's performance of the tests would not have been testimonial, the state asserts, the fact that he refused to take them is also not testimonial. We find the problem to be considerably more complex than that.

Courts are divided on whether evidence of a refusal to provide non-testimonial evidence is itself testimonial. Some have held that a refusal is conduct showing consciousness of guilt and, by analogy with other actions (such as flight) traditionally held to be evidence of consciousness of guilt, is non-testimonal and therefore nonprivileged.[1] *See, e.g., People v. Ellis,* 65 Cal 2d 529, 55 Cal Rptr 385, 421 P2d 393 (1966) (refusal to provide voice exemplar); *State v. Haze,* 218 Kan 60, 542 P2d 720 (1975) (refusal to provide handwriting exemplar); *see also* Annot. 87 ALR2d 370, § 5(b) (refusal to submit to breathalyzer or blood alcohol test).[2] Other courts have held that refusal is "a tacit or overt expression or communication of defendant's thoughts" and thus is testimonial. *State v. Neville,* 312 NW2d 723, 726 (SD 1982), *rev'd on other grounds sub nom South Dakota v. Neville,* 459 US 553, 103 S Ct 916, 74 L Ed 2d 748 (1983); *see also* Annot. 87 ALR2d 370, § 5(c).

Evidence of a defendant's refusal is relevant in that it shows that he believed that the results of the test would tend to incriminate him and thus shows that he believed that he was guilty. Specifically, the state wants the jury to infer, from the fact of a defendant's refusal, that he is saying, "I will not take the field sobriety tests because I believe I will fail them." The evidence is therefore conduct communicating the defendant's state of mind; it is, in essence, testimony concerning the defendant's belief on the central issue of the case. For him to reveal his inner thoughts is necessarily to make a communication, whether by words or by actions. For the state to compel a

---

[1] As we discuss, *infra,* evidence of flight is actually admissible, not because it is noncommunicative, but because it is not compelled.

[2] In these cases the court assumed that the defendant was under a legal compulsion to provide the noncommunicative evidence, although at times that assumption may be questionable. For example, in *People v. Sudduth,* 65 Cal 2d 543, 55 Cal Rptr 393, 421 P2d 401 (1966), *cert den* 389 US 850 (1967), the defendant refused to take both field sobriety tests and a breathalyzer test. The court analyzed the admissibility of the fact of the refusals as though the obligation to cooperate with the officer were the same in each case, although there was a statutory obligation to take the breathalyzer test but, so far as the opinion shows, no statutory or other requirement to take the field sobriety tests. As we discuss, *infra,* the existence of legal compulsion is crucial to whether the evidence is admissible.

defendant to reveal those thoughts is to require him to testify against himself and thus to violate Article I, section 12, of the Oregon Constitution.[3] We turn to the question of whether the communication should be deemed "compelled."

■ The dispositive issue is not whether evidence of the refusal is communicative but whether the communication is the result of governmental compulsion of the sort which Article I, section 12, forbids. The right not to testify against oneself does not prevent the state from using a defendant's out-of-court statements or other communicative activity as evidence. Rather, it prevents the state from *requiring* a defendant to provide such statements or activity. Thus, inculpatory statements to friends, relatives, accomplices and others are generally admissible if there is no improper governmental activity in procuring them. Statements to police or other authorities are also admissible if voluntarily made, either before custodial interrogation begins or, if made during custodial interrogation, after a knowing and voluntary waiver of *Miranda* rights.

■ These principles apply equally to non-verbal activity with communicative effects. Thus, evidence of flight is admissible to show a defendant's consciousness of guilt. *State v. McCormick,* 28 Or App 821, 561 P2d 665, *rev'd on other grounds* 280 Or 417, 571 P2d 499 (1977).[4] If the jury finds that a defendant's flight shows a consciousness of guilt, it has found that the defendant has, in effect, said, "I know that I am guilty, so I don't want to be caught and tried." The conduct is communicative, and it is the communicative effect that the state places in evidence.[5] It is permitted to do so, however, not

---

[3] We decide this case under the Oregon Constitution. However, the Fifth Amendment to the United States Constitution is essentially similar to Article I, section 12, as are comparable provisions in other state constitutions. Thus cases from the United States Supreme Court or from other courts, while not controlling, may be helpful.

[4] Both decisions in *State v. McCormick, supra,* recognize that consciousness of guilt is only one of several possible inferences that may be drawn from flight and that, therefore, the court should not give special instructions on the subject. However, both agree that the evidence is admissible.

[5] In this respect, flight is an "implied assertion" similar to those whose status as hearsay has long been a subject of controversy. The recent trend, reflected in OEC 801(1)(b), is to treat nonverbal conduct as hearsay only if it is intended as an assertion. The reason for this limitation is based on the dangers the hearsay rule is designed to prevent, not on a determination that implied assertions are not assertions or are not communicative. McCormick, *Evidence* § 250 (2d ed 1972). Article I, section 12, has

just because of the nature of the evidence but also because the communication is not compelled; if the state seeks to compel anything, it is that defendant *not* flee and thus that he *not* communicate. *Cf. South Dakota v. Neville, supra* (Fifth Amendment only protects against the use of physical or moral compulsion upon the person whose communication is sought).[6]

Evidence concerning breath tests further illustrate the principle. When the state requires a defendant to provide evidence which is itself noncommunicative, there is no self-incrimination violation if the defendant does provide the evidence, even though his actions in doing so are compelled. *Schmerber v. California,* 384 US 757, 761, 86 S Ct 1826, 16 L Ed 2d 908 (1966); *State v. Cram,* 176 Or 577, 160 P2d 283 (1945) (blood sample). This is what Oregon, like most other states, does when it requires drivers arrested for DUII to take a breathalyzer test. ORS 487.805. The legislature, however, has added to the obligation to take the test a power (not a right) to refuse it. The exercise of that power comes at a price which the legislature has set forth in part in ORS 487.805(4): evidence of the refusal is admissible in court. We have held that this provision does not violate the Fifth Amendment right against self-incrimination, not because the refusal is noncommunicative, but "\* \* \* because the defendant had no constitutional privilege not to submit to the breath test and because [the] statutory right not to take the test is expressly

---

the purpose of protecting against compelled communications of any sort, whether or not they are reliable, while the purpose of the hearsay rule is only to insure the reliability of evidence. Including implied assertions within the scope of the right against self-incrimination is necessary to its purpose, while treating reliable implied assertions as hearsay is not necessary to the purposes of the hearsay rule.

[6] Cases such as *People v. Sudduth, supra,* n 2, and *People v. Ellis, supra,* each of which is cited in *South Dakota v. Neville, supra,* 459 US at 560-61, holding that the refusal to perform requested tests is not testimonial, confuse the issues of whether the fact of the refusal is inadmissible with whether it is communicative. Determining that an action is communicative is only one step in determining whether it is constitutionally protected. So long as they are not compelled, both communicative actions and direct statements are not protected. If they are compelled, either directly or by the nature of the situation, they are protected. As noted *supra,* n 2, cases of this sort often incorrectly assume that a person must cooperate with whatever tests the police request, unless there is some constitutionally protected right justifying refusal. Because of this assumption, they neither seek nor find any legal authority compelling that cooperation. Yet it is elementary that a governmental official may require a citizen to take only such actions as the official has been granted the authority to require. *See State v. Lowry,* 295 Or 337, 344 n 6, 667 P2d 996 (1983).

qualified by statute * * *." *State v. Gardner,* 52 Or App 663, 669, 629 P2d 412, *rev den* 291 Or 419 (1981). We assumed in *Gardner* that the refusal was communicative but held that it was not improperly compelled.

All legal compulsion is on the driver to take the breathalyzer test. The penalties for refusal are not designed to elicit otherwise unavailable testimony but to coerce the driver into agreeing to provide the noncommunicative evidence of the test. The state has not given the driver a Hobson's Choice between two equally impermissible requirements. Rather, it seeks the evidence of the test—evidence to which it is entitled. *State v. Gardner, supra.*

Use in court of the fact of the refusal is simply a condition that the legislature has placed on its grant of the power to refuse to provide the evidence. In this respect evidence of a refusal to take a breathalzyer test is similar to evidence of flight: both are communicative, but both are actions which the state at the very least tries—and is entitled to try—to discourage. The compulsion on the defendant is not to provide the communicative evidence but to provide non-communicative evidence. The sanction of the use of the communicative refusal at trial is proper. The United States Supreme Court has adopted our approach.

> "* * * Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the state offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test." *South Dakota v. Neville, supra,* 459 US at 563-64. (Emphasis in original).

The state argues that the specie of evidence it seeks to use in this case is analogous to evidence of flight or a breath test refusal and is, therefore, admissible. We disagree. Evidence of refusal to take a field sobriety test is also communicative, but it is in a different category from evidence of flight or evidence of refusal to provide *required* non-communicative evidence. There is no statutory or other legal requirement that

a driver take the field sobriety tests, either before or after arrest. While an officer may properly request a driver to do so, the officer may go no further. Because defendant had no obligation to take the test, there could also be no conditions placed on his refusal. Use of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which it also had no right. The situation is thus a true Hobson's Choice. Defendant's communication was compelled; evidence of it is inadmissible under Article I, section 12, of the Oregon Constitution.

Affirmed.

**WARDEN, J.,** specially concurring.

Because I agree with the majority that the decision of the trial court should be affirmed, but for the reason that the state's appeal was untimely, I concur in the result.

The state appeals pursuant to ORS 138.060, which provides:

> "The state may take an appeal from the circuit court or the district court to the Court of Appeals from:
>
> "* * * * *
>
> "(3)   An order made prior to trial suppressing evidence * * *."

ORS 18.071 provides:

> "* * * [T]he notice of appeal shall be served and filed * * * not later than 30 days after the judgment or order appealed from was *given or made*." (Emphasis supplied.)

The majority, by a process of logical legerdemain that could only fool a lawyer, concludes that "giving or making" an order means stamping it "filed." The processes are not the same. The order was given or made by the judge as a part of his judicial duties; it was stamped "filed" as the ministerial act of a court clerk.

The majority gives as its reason for equating "given or made" with "stamped 'filed'" that, until the stamping is done, the order "is not yet readily available to the public or to the parties." What difference does it make, if it is indeed a

fact, that the order is not available to the public, when what is to be determined is the beginning of the time for appeal by one of the parties? I submit that the reason would be makeweight, if it had weight.

I submit, too, that it makes no difference for the purpose of starting the time for appeal running that the order may not be readily available to the parties before it is stamped "filed." What is significant is that parties know what the court has ordered, in this case suppression of evidence of defendant's refusal to take field sobriety tests. Here, the parties had knowledge of the court's decision on November 5, 1982, when the court orally announced its ruling on the motion. On December 6, 1982, they were again advised of the court's ruling when the order was signed and delivered to the clerk's office and an employe of that office telephoned both attorneys to advise them of those facts. In my view, the order was "given and made" on December 6, and the state was on notice that, if it intended to do so, it had to appeal the order within 30 days. It should not be given additional time because of delays in the clerk's office.

In *State v. Delker,* 26 Or App 497, 552 P2d 1313 (1976), the defendant contended that the state's appeal should be dismissed, because it was not timely. We rejected his argument that the appeal period began to run when the trial judge orally announced his order. Relying on *Charco, Inc. v. Cohn,* 242 Or 566, 411 P2d 264 (1966), we held that, because the order was not effective until it was filed, the appeal period did not begin running until that time. 26 Or App at 503. Implicit in that holding is that the time for appeal begins to run when an order suppressing evidence is filed. In *Charco,* the Supreme Court reaffirmed its previous holdings that orders not signed in open court become effective on the date of filing, stating:

> "Any other rule would make an order effective, not upon the will of the judge who made the order, but upon the whim of the clerk as to when it should be entered." 242 Or at 570.

The rule abhorred by the Supreme Court is the one the majority adopts.

"Filing" is the delivery of the order to the clerk of the court with the intent that it be filed. *Charco, Inc. v. Cohn,*

*supra; Highway Commission v. Fisch-Or,* 241 Or 412, 399 P2d 1011, 406 P2d 539 (1965). I would hold that an order is "given or made" when it is filed, *i.e.,* delivered to the clerk for filing. That was done, in this case, on December 6, 1982. The state's notice of appeal, filed January 13, 1983, was not timely. I would affirm the trial court on that basis and would not consider whether evidence of defendant's refusal to take field sobriety tests should be suppressed as compelled communication. Accordingly, I specially concur.