MICHAEL LARRY FARMER

v.

COMMONWEALTH OF VIRGINIA

No. 0532-88-3

Decided April 10, 1990

COUNSEL

Michael J. Barbour (Gilmer, Sadler, Ingram, Sutherland & Hutton, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a January 8, 1988 bifurcated trial by jury, Michael Larry Farmer, appellant, was convicted of driving under the influence (DUI), a third or subsequent offense within five years in violation of Code § 18.2-266, and of driving after being declared an habitual offender in violation of Code § 46.1-387.8. In this appeal, Farmer argues that the trial court erred by admitting evidence of his prior DUI convictions during the guilt stage of the trial and by admitting evidence of his refusal to perform field sobriety tests.[1] We find that the trial court did not err by admitting evidence of Farmer's prior DUI convictions, but did err in admitting evidence of Farmer's refusal to submit to field sobriety tests.

## I. FACTS

At approximately 2:16 a.m. on August 2, 1986, Deputy Sheriff Robert Hoback of the Pulaski County Sheriff's Department observed a purple AMC drive past him in the opposite direction. Hoback recognized the driver of the vehicle as Farmer, whom he had known approximately twenty years. Because Hoback knew that Farmer did not possess a valid driver's license, he turned to pursue Farmer. As Hoback pursued the vehicle, it sped up before turning into a gas station and coming to a stop. Officer Hoback parked his vehicle behind Farmer's and approached Farmer's vehicle. Hoback discovered Farmer in the back seat and his companion in the front passenger seat; no one was in the driver's seat.[2] Hoback testified that he detected a strong odor of alcohol when he assisted Farmer out of the vehicle. According to Hoback, Farmer was unsteady on his feet, was weaving, had slurred speech and glassy eyes, used abusive language, and had a strong odor of alcohol on his breath. On cross-examination, Farmer admitted that he had consumed six to ten beers over a period of several hours that

---

[1] Farmer was tried jointly on the DUI and habitual offender charges without objection. Accordingly, on appeal, we assume that the evidence of which he complains was considered by the jury only for purposes of the DUI charge for which it was produced by the Commonwealth.

[2] Farmer does not challenge the sufficiency of the evidence to establish that he was the driver of the vehicle, and, therefore, we do not address it in this appeal. Rule 5A:18. In addition, because Farmer's conviction of driving after being declared an habitual offender was supported by the evidence that he was driving, whether under the influence or not, we affirm his conviction for that offense.

night. Over Farmer's objection, Officer Hoback testified that Farmer refused to perform the requested field sobriety tests. The Commonwealth requested and was granted a bifurcated trial. During the guilt phase of the trial, the Commonwealth introduced evidence of Farmer's prior DUI convictions. Farmer's entire traffic record, which included the prior DUI offenses and various other traffic infractions, was introduced during the sentencing phase of the trial.

## II. EVIDENCE OF PRIOR DUI CONVICTIONS

Farmer first alleges that the trial court erred by admitting evidence of his prior DUI convictions during the guilt phase of his bifurcated trial for DUI as a third or subsequent offense within five years. Farmer argues that evidence of prior DUI convictions is not part of the substantive offense of driving under the influence in violation of Code § 18.2-266 made punishable by Code § 18.2-270, and, therefore, is not admissible in the guilt stage of a bifurcated trial in accordance with Code § 46.2-943 (formerly Code § 46.1-347.2). We do not construe Code § 46.2-943 as precluding evidence of prior DUI convictions in the guilt stage of a trial for DUI as a third or subsequent offense. Further, we hold that evidence of prior DUI convictions is necessary to prove the substantive offense of driving under the influence as a third or subsequent offense, and therefore, is admissible during the guilt stage of a bifurcated trial.

Code § 46.2-943 allows for a bifurcated trial for traffic offenses and provides, in pertinent part, that "[w]hen any person is found guilty of a traffic offense, the court or jury trying the case may consider the prior *traffic record* of the defendant before imposing sentence as provided by law." (emphasis added). The purpose of a bifurcated trial is to allow the trier of fact to consider the prior traffic record of the accused for sentencing purposes while avoiding the risk of prejudice to the accused when determining guilt or innocence. Thus, Farmer correctly asserts that evidence of the prior *traffic record* of the accused is admissible only in the sentencing phase of a bifurcated trial, since allowing it in the guilt phase of a trial would undermine the purpose of Code § 46.2-943. However, we disagree with Farmer's contention that evidence of prior DUI convictions, standing alone, is not admissible during the guilt phase of a trial where the offense is charged

as a third or subsequent offense pursuant to Code §§ 18.2-266 and 18.2-270. Evidence of prior DUI convictions and evidence of prior traffic records are not the same. Traffic records as contemplated by Code § 46.2-943 contain prior suspensions and revocations of a driver's license and prior convictions of moving traffic violations, including, but not limited to, DUI convictions. Thus, while evidence of a prior DUI conviction may be a part of a traffic record, such evidence does not necessarily constitute the *traffic record* for purposes of the application of Code § 46.2-943.

In the present case, at the guilt stage of the trial, the Commonwealth introduced evidence by "Commonwealth Exhibit #1" of Farmer's prior DUI convictions in 1982, 1985 and 1986, respectively. Farmer's prior traffic record, which contained convictions of numerous other traffic violations, was produced by "Commonwealth Exhibit #6" and was not introduced until the sentencing stage of the trial. This procedure is consistent with the provisions of Code § 46.2-943. This Code section prohibits the introduction of the entire *traffic record* during the guilt stage of a bifurcated trial. Because we find that evidence of a prior DUI conviction is independent of the traffic record and was appropriately introduced in this case, we hold that evidence of the prior DUI convictions was admissible during the guilt phase of Farmer's trial.

■ Evidence of prior DUI convictions is necessary during the guilt stage of a trial for DUI as a third or subsequent offense in order for the Commonwealth to meet its burden of proof. As the Commonwealth asserts, it "is entitled to prove the elements set forth in the [warrant], and proof of the [DUI charge as a third or subsequent offense under Code § 18.2-266] required proof of the previous conviction[s] for [DUI]." *Glover v. Commonwealth*, 3 Va. App. 152, 161, 348 S.E.2d 434, 441 (1986), *aff'd*, 236 Va. 1, 372 S.E.2d 134 (1988). Indeed, in *Calfee v. Commonwealth*, 215 Va. 253, 255, 208 S.E.2d 740, 741 (1974) (quoting *Commonwealth v. Ellett*, 174 Va. 403, 409, 413, 4 S.E.2d 762, 764, 766 (1939)), our Supreme Court held that "[f]or the heavier punishment to be imposed by the jury or the court trying the case without the jury, 'the prior offense must be charged and proven.'"

The arrest warrant charged Farmer with unlawfully operating a motor vehicle while intoxicated as a third or subsequent offense within five years in violation of Code § 18.2-266. To convict Farmer of the offense charged, the Commonwealth was required

to present evidence to prove that Farmer previously had been convicted on two or more occasions of driving under the influence within a five year period. The jury was properly instructed that in order to convict Farmer of the offense charged, the Commonwealth had to prove that Farmer was driving a motor vehicle, was under the influence at the time of driving the vehicle, and had two or more prior DUI convictions within the past five years. Not only would the Commonwealth necessarily fail to meet its burden of proof if evidence of prior DUI convictions was not admitted, but the trial court could not properly instruct the jury on the elements of the charge of driving under the influence as a third or subsequent offense if the Commonwealth was not permitted to introduce evidence of the prior DUI convictions during its case in chief.

In summary, we hold that evidence of prior DUI convictions does not constitute the "traffic record" as contemplated by Code § 46.2-943 where the offense charged under Code § 18.2-266 is a subsequent offense of DUI punishable under Code § 18.2-270. We further hold that proof of such charge requires proof of the prior DUI convictions. For these reasons, the trial court did not err in admitting evidence of Farmer's prior DUI convictions independent of his prior traffic record during the guilt stage of the trial.

## III. REFUSAL TO SUBMIT TO FIELD SOBRIETY TESTS

Farmer also argues that his right against self-incrimination under the United States and Virginia Constitutions was violated when the trial court admitted evidence of his refusal to submit to field sobriety tests. Although this is an issue of first impression in Virginia, it has been addressed by several of our sister states and by the United States Supreme Court.

The fifth amendment to the United States Constitution, as applied to the states through the fourteenth amendment, provides that no person shall be compelled to be a witness against himself in a criminal trial. Similarly, Article I, § 8 of the Virginia Constitution provides that no person shall "be compelled in any criminal proceeding to give evidence against himself. . . ." The fifth amendment protection against self-incrimination extends only

"to testimonial or communicative evidence and does not protect one from being compelled to produce nontestimonial evidence." *State v. Neville*, 346 N.W.2d 425, 429 (S.D. 1984) (quoting *State v. Maher*, 272 N.W.2d 797, 799 (S.D. 1978)). *See also Schmerber v. California*, 384 U.S. 757, 764 (1966); *Deering v. Brown*, 839 F.2d 539, 541 (9th Cir. 1988); *United States v. Williams*, 704 F.2d 315, 317 (6th Cir.), *cert. denied*, 464 U.S. 991 (1983); *State v. Theriault*, 144 Ariz. 166, 167, 696 P.2d 718, 719 (Ct. App. 1984); *Walton v. City of Roanoke*, 204 Va. 678, 681-82, 133 S.E.2d 315, 317-18 (1963). "Testimonial" evidence for fifth amendment purposes is "evidence which reveals the subject's knowledge or thoughts concerning some fact." *Commonwealth v. Brennan*, 386 Mass. 772, ___, 438 N.E.2d 60, 64 (1982). "[T]he prohibition of compelling a man in a criminal court to be witness against himself is . . . not an exclusion of his body as evidence when it may be material." *Schmerber*, 384 U.S. at 763 (quoting *Holt v. United States*, 218 U.S. 245, 252-53 (1910)). Thus, the Supreme Court in *Schmerber* concluded that a defendant could be forced to undergo a blood-alcohol test without violating his fifth amendment right against self-incrimination since:

> [n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone.

384 U.S. at 765.

In *South Dakota v. Neville*, 459 U.S. 553 (1983), the Supreme Court went further and held that "the admission into evidence of a defendant's refusal to submit to [a blood-alcohol] test likewise does not offend the right against self-incrimination." *Id.* at 554. In reaching this conclusion, the Court declined to determine whether a refusal constitutes testimonial evidence since "[t]he situations arising from a refusal present a difficult gradation from a person who indicates refusal by complete inaction, to one who nods his head negatively, to one who states 'I refuse to take the test,' to the respondent here, who stated 'I'm too drunk, I won't pass the test.' " *Id.* at 561-62. The Court reasoned that it was unnecessary

to determine whether evidence of a refusal is testimonial because it would not fall under the protective provisions of the right in any event since no impermissible coercion or compulsion occurred as the state provided the accused with a choice of either submitting to the test or refusing.[2] *Id.* at 562. Since the state could legitimately compel the accused to submit to the blood-alcohol test in accordance with *Schmerber*, the Court reasoned that "the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making the choice." *Id.* at 563. Because the accused was offered a choice, the Court held that there was no element of compulsion, and therefore, S.D. Codified Laws Ann. §§ 32-23-10.1 and 19-13-28.1 allowing the admission of evidence of a refusal to submit to testing at a trial for DUI does not violate a defendant's fifth amendment right against self-incrimination.

While the holding in *Neville* would appear to compel us to reject Farmer's argument that his fifth amendment right against self-incrimination was violated, we do not reach that issue because we find that Farmer's right against self-incrimination as guaranteed by Article I, § 8 of the Virginia Constitution was violated.[3]

We first address Farmer's argument that evidence of his refusal to take the so-called field sobriety test was inadmissible because there is no statutory authority for law enforcement authorities to request or require a suspected driver to perform such tests. Thus, he argues that there should be no conditions or penalties on the refusal to take such tests.

---

[2] S.D. Codified Laws Ann. § 32-23-10 (1989) permits a suspect to refuse to submit to a blood test to determine the alcoholic content of his blood and requires police officers to inform a suspect of this right. However, if a suspect refuses to submit to chemical testing, his license may be revoked for a period of one year, S.D. Codified Laws Ann. § 32-23-10, and evidence of the refusal may be admitted at trial. S.D. Codified Laws Ann. §§ 32-23-10.1 and 19-13-28.1.

[3] In *Gardner v. Commonwealth*, 195 Va. 945, 81 S.E.2d 614 (1954), the Court held that admission of a statement of an accused's refusal to submit to a blood test did not violate his state constitutional right against self-incrimination based on the then current analysis that the constitutional prohibition against self-incrimination did not apply to evidence of extra-judicial admissions or confessions. Because the accused was not a witness, his statement was held to be admissible. Because it is now well settled that the right against self-incrimination has been extended, we find the Commonwealth's reliance on this case is misplaced. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

In Virginia, unlike South Dakota and other states, our statutory scheme specifically prohibits the use of an accused's refusal to take a breath or blood test in the accused's trial for driving under the influence of alcohol pursuant to Code § 18.2-266, the general statute prohibiting such conduct. Code § 18.2-267 provides for a preliminary breath test of any person suspected by the police of driving under the influence of alcohol. This Code section further provides that the suspected person shall have the right to refuse to permit his breath to be analyzed and that his failure to permit such analysis shall not be evidence against him. Regardless of a refusal under Code § 18.2-267, Code § 18.2-268(B) provides that one who operates a motor vehicle on a public highway in the Commonwealth is deemed to have consented to chemical testing to determine the alcoholic content of his blood. Code § 18.2-268(E) provides that the accused may refuse to submit to chemical testing. In the event of a refusal, Code § 18.2-268(T) provides for a suspension of the accused's driver's license upon a determination that the refusal was not reasonable. Code § 18.2-268(O), however, provides that "[t]he failure of an accused to permit a sample of his blood or breath to be taken for a chemical test . . . is not evidence and shall not be subject to comment by the Commonwealth at the trial of [the driving under the influence charge], except in rebuttal." *See Walton*, 204 Va. at 683, 133 S.E.2d at 318 (evidence of refusal to submit to blood test inadmissible in trial for DUI).

■ Farmer correctly asserts that there is no statutory authority in Virginia for police administration of field sobriety tests. Moreover, there are no "standardized" field sobriety tests in this state. While such tests are frequently administered by law enforcement officers in this state to make a preliminary determination of the condition of a suspected driver, there is no statutory requirement that a driver take such tests either before or after arrest for violation of Code § 18.2-266. Similarly, unlike the refusal to take breath or blood tests, there is no statutory prohibition against the admission of evidence of a refusal to take a field sobriety test. In view of this statutory silence, however, we are unable to discern a statutory basis upon which Farmer would have this court address his challenge to the admissibility of his refusal. In short, there is simply no statutory prohibition available to Farmer.

██ We turn now to Farmer's claim under the Virginia Constitution. At the outset, we recognize that the *results* of field sobriety tests, blood-alcohol or breath tests constitute "real" or "physical" evidence which is not protected by the right against self-incrimination. *Schmerber*, 384 U.S. at 764; *see also Theriault*, 144 Ariz. at 167, 696 P.2d at 719; *People v. Ramirez*, 199 Colo. 367, 374-75, 609 P.2d 616, 621 (1980); *State v. Haze*, 218 Kan. 60, ____, 542 P.2d 720, 721 (1975); *Walton*, 204 Va. at 681-82, 133 S.E.2d at 317-18. To the extent that field sobriety tests are dexterity tests, the *results* of such tests constitute real or physical evidence since the "tests are based on the loss of coordination, balance and dexterity that results from intoxication, [and] they do not force the subject to betray his subjective knowledge of the crime through communication or testimony." *State v. Hoenscheid*, 374 N.W.2d 128, 130 (S.D. 1985). Conversely, a *refusal* to submit to such tests conveys the defendant's thoughts or knowledge, which the right against self-incrimination is intended to protect.

> Evidence of a defendant's refusal is relevant in that it shows that he believed that the results of the test would tend to incriminate him and thus shows that he believed that he was guilty. Specifically, the state wants the jury to infer, from the fact of a defendant's refusal, that he is saying, "I will not take the field sobriety tests because I believe I will fail them." The evidence is therefore conduct communicating the defendant's state of mind; it is, in essence, testimony concerning the defendant's belief on the central issue of the case.

*State v. Green*, 68 Or. App. 518, 522, 684 P.2d 575, 577, *rev'd on other grounds*, 71 Or. App. 519, 692 P.2d 720 (1984). Indeed, "[t]he obvious purpose and certain result of proving a person accused of intoxication refused a request to take . . . test[s] is to show the jury that the accused, with his full knowledge of the true amount he had consumed, thought he could not afford to take said test[s]." *Dudley v. State*, 548 S.W.2d 706, 707-08 (Tex. Crim. App. 1977).[4] Further, unlike the situation where a defendant is

---

[4] Following *Neville*, Texas passed legislation similar to that of South Dakota expressly allowing the introduction of evidence of refusal to submit to testing in a trial for DUI. *See* Tex. Rev. Civ. Stat. Ann. art. 67011-5, § 3(g) (Vernon Supp. 1984). *See also Ashford v. State*, 658 S.W.2d 216 (Tex. Ct. App. 1983). However, Texas has continued to follow the holding of *Dudley* in those cases where the incident giving rise to the charge of

compelled to produce physical evidence, as in *Schmerber*, a refusal to submit to testing necessarily utilizes the defendant's testimonial capacities, and the defendant's participation is no longer that of mere donor. *Schmerber*, 384 U.S. at 765. Rather, the defendant is forced to reveal his thoughts concerning his level of intoxication. "[T]he expression of the contents of an individual's mind is testimonial communication." *Doe v. United States*, 487 U.S. 201, 210 (1988). We therefore hold that evidence of refusal to submit to a field sobriety test is testimonial or communicative evidence. However, in order to be inadmissible, the refusal also must have been compelled by the state. Article I, § 8 Virginia Constitution. *See also Green*, 68 Or. App. at 523, 684 P.2d at 578.

■ Prohibited compulsion exists when a court imposes a penalty "for exercising a constitutional privilege . . . by making its assertion costly." *Griffin v. California*, 380 U.S. 609, 614 (1965). "The *Griffin* case stands for the proposition that a defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify." *Carter v. Kentucky*, 450 U.S. 288, 301 (1981). When Officer Hoback requested that Farmer take the field sobriety tests, Farmer admittedly had the option of complying or refusing. Farmer refused. There was no practical way Officer Hoback could compel cooperation with a dexterity test. However, to hold that the state did not compel Farmer's refusal because, as a practical matter, Farmer had a choice, we believe, is unsound. Farmer could have avoided having the testimonial content of his refusal used against him only by submitting to the field test which the Commonwealth otherwise had no statutory authority to require. Unlike a blood or breath test, there is no "implied consent" to submit to a field test, and unlike a blood or breath test, there is no statutory guarantee that the testimonial content of the refusal will not be used against the accused. It is true that a refusal to submit to a blood or breath test may result in the revocation of one's driving privilege and, to that extent, a "penalty" is attached to the "act" of refusal. But in the case of the blood or breath test, the Commonwealth, by extracting a penalty, is not "compelling" testimonial communications since to impose the

DUI occurred before the effective date of the statutory provision. *See, e.g., Sinast v. State*, 688 S.W.2d 631 (Tex. Ct. App. 1985); *Brant v. State*, 676 S.W.2d 223 (Tex. Ct. App. 1984).

"penalty" it is not relying on the "testimonial" content of the refusal. The "act" of refusal, without more, is sufficient to result in loss of driving privileges. No inference as to content of the actor's state of mind is necessary to impose the sanction. "If [the accused] performs the tests he provides evidence. If he refuses the test he provides evidence. This is compulsion of the most insidious nature." *Hoenscheid*, 374 N.W.2d at 134 (Grosshans, J., dissenting). We believe the conclusions of the Court of Appeals of Oregon are appropriate in Virginia.

> While an officer may properly request a driver to [take the field sobriety tests], the officer may go no further. Because defendant had no obligation to take the test, there could also be no conditions placed on his refusal. Use of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which it also had no right. The situation is thus a true Hobson's Choice.

*Green*, 68 Or. App. at 526, 684 P.2d at 579.

We hold that evidence of a refusal to submit to field sobriety tests, when used by the finder of fact as evidence that the accused refused to submit to the test because he believed he might fail, violates the accused's right, under article I, § 8 of the Constitution of Virginia, not to "be compelled . . . to give evidence against himself." Therefore, we hold that the trial court erred by admitting evidence of Farmer's refusal at his trial for DUI.

## IV. HARMLESS ERROR ANALYSIS

The Commonwealth argues that if the trial court did err by admitting evidence of Farmer's refusal, the error was harmless. We disagree. "It is well settled that 'error in a criminal case will require reversal of a conviction unless the error is harmless beyond a reasonable doubt.'" *Scaggs v. Commonwealth*, 5 Va. App. 1, 6, 359 S.E.2d 830, 832 (1987) (quoting *Jones v. Commonwealth*, 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978)). Further, "[e]rror will be presumed to be prejudicial unless it plainly appears that it could not have affected the result." *Joyner v. Commonwealth*, 192 Va. 471, 477, 65 S.E.2d 555, 558 (1951).

While there was additional evidence of Farmer's intoxication, we cannot say that the admission of Farmer's refusal was harmless beyond a reasonable doubt. The evidence which Farmer sought to exclude conveyed to the jury that Farmer himself believed that he was too intoxicated to take and pass the requested tests. Therefore, because we cannot say that the admission of this evidence did not affect the jury's decision, we cannot find that the error was harmless beyond a reasonable doubt.

For the foregoing reasons, we reverse Farmer's conviction of driving under the influence and remand this case for a new trial, if the Commonwealth be so advised.

*Affirmed in part,
reversed in part,
and remanded.**

Barrow, J., concurred.

Moon, J., dissenting

I would affirm the decision of the trial court because the error, if any, was harmless beyond a reasonable doubt. Defendant did not seriously contend at any point in the trial that he was not under the influence. His defense was that he was not driving the car. The uncontradicted evidence was that he was unsteady on his feet, was weaving, had slurring speech and glassy eyes, that he had a heavy odor of alcohol on his person, and that he used profane language toward the police officer who arrested him. He admitted that he drank six to seven beers during the evening, before leaving a bar at midnight, and afterward drank as many as three beers in his car. He did not contradict the police officer in any respect concerning the police officer's observations regarding his sobriety. Under the circumstances, I do not believe that any rational trier of fact would have found but that appellant was driving under the influence, even if the evidence of refusal to take the field sobriety tests had been excluded. Therefore, I would hold that any error in the evidence's admission was harmless beyond a reasonable doubt.

---

* On June 6, 1990 the Commonwealth's petition for rehearing *en banc* was granted and a mandate entered April 10, 1990 was stayed pending rehearing.