STATE OF CONNECTICUT *v.* PAUL MONAHAN
(AC 30487)

DiPentima, C. J., and Robinson and Alvord, Js.

Argued September 23—officially released November 16, 2010

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. DeJoseph*, assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Paul Monahan, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1). On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to support his conviction, (2) prosecutorial impropriety deprived him of a fair trial and (3) the court improperly admitted evidence regarding a field sobriety

test that had been administered prior to his arrest. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 19, 2007, at approximately 7 p.m., James Kilkenny was driving southbound on River Road, a two lane street in Wilton, when he approached an intersection at Wilton center that was controlled by four stop signs. As Kilkenny's vehicle came to a stop, he observed a vehicle waiting at the stop sign to his right.[1] After waiting almost one full minute for the vehicle to proceed, Kilkenny sounded his vehicle's horn. This startled the other driver, later identified as the defendant, who had been staring forward blankly. The defendant then attempted to turn his vehicle right into the southbound lane of River Road but drove out too far, crossed the double yellow line and almost hit a car driven by Jennifer Falconer that was traveling in the northbound lane. The defendant thereafter made a three point turn to maneuver his vehicle into the southbound lane and continued driving.

Kilkenny proceeded through the stop sign and continued southbound behind the defendant for approximately one-half mile. Kilkenny observed as the defendant, who was traveling at approximately ten miles per hour,[2] drove his vehicle onto the right curb three or four times and into the northbound lane, almost colliding with two vehicles. After the defendant crossed into the northbound lane, Kilkenny called 911. The defendant again maneuvered his vehicle into the southbound lane and continued driving. Kilkenny continued to follow and observed as the defendant drove his vehicle onto the right curb two or three more times and once again into the northbound lane, almost hitting

---

[1] Kilkenny testified that aside from this vehicle, he did not recall seeing any other vehicles at the intersection during this time.

[2] According to Kilkenny's testimony, the speed limit on this portion of River Road was twenty or twenty-five miles per hour.

another vehicle. After the third near accident, Kilkenny drove his vehicle alongside the passenger side of the defendant's vehicle, which then was stopped in the northbound lane facing in the wrong direction, to prevent the defendant from moving. The defendant attempted to back his vehicle into the southbound lane but had to stop when a second vehicle drove in behind him.

Shortly thereafter, Sergeant Thomas Tunney and Officer Eva Zimnoch of the Wilton police department, arrived at the scene.[3] They approached the driver's side of the defendant's vehicle and requested the defendant's license, registration and proof of insurance. The officers smelled a strong odor of alcohol emanating from the vehicle, noticed that the defendant's speech was slurred and observed a red stain on the defendant's shirt that looked like wine. Because of these observations, the officers asked the defendant to turn off the vehicle's motor and to exit the vehicle so that they could perform field sobriety tests. The defendant initially had trouble turning off the motor, making several unsuccessful attempts to grasp the ignition key before finally turning the motor off. Thereafter, as the defendant stepped out of his vehicle, he moved slowly and held onto the vehicle's door to maintain his balance because he was unsteady on his feet.

Once the defendant had exited his vehicle, Zimnoch attempted to perform field sobriety tests, which consisted of the horizontal gaze nystagmus test,[4] the walk

---

[3] The record suggests that other members of the Wilton police department may have participated in the events leading to the defendant's arrest on December 19, 2007. Tunney and Zimnoch, however, were the only members of the department who testified.

[4] Zimnoch explained that the horizontal gaze nystagmus test is administered by placing a stimulus, such as a pen, approximately twenty inches in front of an individual's eyes, moving it from side to side and observing the individual's eye reactions. "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised

and turn test and the one leg stand test, to determine whether the defendant was intoxicated. The defendant failed the horizontal gaze nystagmus test and refused to perform the other two tests. Following his refusal, the defendant was placed under arrest and taken to the Wilton police department. The police conducted a search of the defendant's vehicle and discovered an unopened four pack of merlot wine.

After the defendant was transported to the Wilton police department, Zimnoch read the defendant his *Miranda* rights[5] and the implied consent advisory form concerning a Breathalyzer test.[6] The defendant signed a notice of rights form but refused to submit to a Breathalyzer test. During questioning, the defendant admitted that he had consumed two or three drinks in his vehicle starting at about 6 p.m. and that he had stopped drinking when his vehicle became blocked in on River Road. When questioned regarding the accidents he nearly caused, the defendant denied the allegations.

The state charged the defendant in a part A information with operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1) and in a part B information with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (g). On June 25, 2008, following a jury trial, the defendant was convicted on the part A

on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Weed*, 118 Conn. App. 654, 658 n.1, 984 A.2d 1116 (2009).

[5] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] General Statutes § 14-227b (a) provides in relevant part: "Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . ."

information for violating § 14-227a (a) (1). Thereafter, on the same day, the defendant entered a plea of nolo contendere on the part B information and the court rendered a finding of guilty. On October 15, 2008, the defendant was sentenced to two years of incarceration, execution suspended after six months, 120 days of which was mandatory, followed by three years of probation and a $1000 fine. This appeal followed.

I

The defendant first claims that the evidence adduced at trial was insufficient to support his conviction.[7] More specifically, the defendant claims that the state did not produce sufficient evidence to prove beyond a reasonable doubt every element of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1). We disagree.

We begin by setting forth the applicable standard of review. "Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985). "[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the

[7] We address the defendant's sufficiency of the evidence claim first "[b]ecause the defendant would be entitled to a judgment of acquittal were [he] to succeed on [his] claim that the evidence was insufficient to support [his] conviction . . . ." *State* v. *Bereis*, 117 Conn. App. 360, 364, 978 A.2d 1122 (2009).

defendant that, had it been found credible by the [jury], would have resulted in an acquittal." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 490, 698 A.2d 898 (1997). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." *State* v. *Dumlao*, 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985).

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilt." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Sinclair*, supra, 197 Conn. 576–77.

Section 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both . . . ." This means that "[a] conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1) requires proof [beyond a reasonable doubt] of

(1) operation of a motor vehicle (2) on a public highway or one of the other designated areas (3) while under the influence of intoxicating liquor." *State* v. *Gordon*, 84 Conn. App. 519, 527, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004); see also *State* v. *Bereis*, 117 Conn. App. 360, 365, 978 A.2d 1122 (2009).

The jury heard evidence that the defendant drove his vehicle onto River Road near the Wilton center intersection and then drove it onto the right curb five to seven times and into the wrong lane three times, almost hitting four cars. The jury also heard evidence that, when the officers arrived at the scene, a strong odor of alcohol was emanating from the defendant's vehicle and that the defendant's speech was slurred. Furthermore, the state presented evidence that the defendant had trouble finding and turning the key in the ignition of his vehicle, he was unsteady on his feet upon exiting his vehicle and he failed the horizontal gaze nystagmus test. Finally, the defendant admitted to having consumed two or three drinks in his vehicle no more than one and one-half hours before he was arrested. On the basis of this evidence, along with the inference that the jury was permitted to draw because of the defendant's refusal to consent to a Breathalyzer test,[8] we conclude that there was sufficient evidence for the jury to have found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1).[9]

---

[8] General Statutes § 14-227a (e) provides in relevant part: "In any criminal prosecution for a violation of subsection (a) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested . . . shall be admissible . . . . If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

[9] We reject the defendant's claim to the extent that he suggests that the evidence was insufficient because Kilkenny and Falconer were not credible witnesses. As this court previously has stated: "[T]he jury is the sole arbiter of witness credibility and may accept or reject, in whole or in part, the

## II

The defendant next claims that prosecutorial impropriety deprived him of a fair trial. The defendant specifically argues that the manner in which the prosecutor referenced the defendant's refusal to take a Breathalyzer test in the prosecutor's closing argument violated the defendant's privilege against compulsory self-incrimination guaranteed by the fifth amendment to the United States constitution[10] and, thus, constituted an impropriety.[11] We decline to review this claim due to an inadequate brief.

The following additional facts are relevant to the defendant's claim. During his closing argument, the prosecutor discussed the difference between direct and circumstantial evidence. He called the jury's attention to examples of each type of evidence presented by the state and explained how each could be interpreted to find that the defendant was under the influence of intoxicating liquor as required by § 14-227a (a) (1). In discussing the defendant's refusal to submit to a Breathalyzer test, the prosecutor stated: "What bigger piece of circumstantial evidence would there be if the

truth of any witness' testimony. . . . This court may not revisit credibility determinations." (Citation omitted.) *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). Therefore, we will not review or second-guess the jury's determination of the credibility of these witnesses.

[10] "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const., amend. V.

[11] In his brief, the defendant also cites article first, § 8, of the Connecticut constitution. We decline to review his claim under the Connecticut constitution because he has failed to provide as part of his brief a separate and independent analysis of its applicability under the circumstances of this case. *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004) ("We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." [Internal quotation marks omitted.]).

defendant was under the influence other than his refusal to take the test?"

As this court previously has recognized: "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citations omitted; internal quotation marks omitted.) *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 (1999).

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 81, 3 A.3d 1 (2010).

We decline to review the defendant's second claim because we conclude that his brief is inadequate and devoid of any relevant analysis regarding the alleged impropriety. In his brief, the defendant cites only one case, *State* v. *Green*, 68 Or. App. 518, 684 P.2d 575, cert. denied, 297 Or. 601, 687 P.2d 795 (1984), for the general proposition that refusal to submit to a Breathalyzer test implicates the privilege against compulsory self-incrimination. *Green*, however, is irrelevant to the

present claim because it was decided on Oregon state constitutional grounds and neither discussed nor mentioned the fifth amendment privilege.

Aside from *Green*, the defendant does not provide any analysis, or cite to any legal authority, to explain how his fifth amendment privilege against compulsory self-incrimination is implicated by the prosecutor's statement in the present case. Additionally we note that the United States Supreme Court has recognized that "the Fifth Amendment . . . applies *only* when the accused is *compelled* to make *a testimonial communication* that is incriminating." (Emphasis added.) *Fisher* v. *United States*, 425 U.S. 391, 408, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976). The defendant, however, has not set forth any legal analysis that explains how his refusal was either compelled or testimonial within the meaning of the fifth amendment. Accordingly, we decline to consider this claim.

## III

The defendant finally claims that the court improperly admitted evidence regarding a field sobriety test that had been administered prior to his arrest. More specifically, the defendant argues that the court improperly admitted evidence of the horizontal gaze nystagmus test that was administered by Zimnoch without first requiring the state to satisfy the criteria for the admission of scientific evidence. We decline to review this unpreserved evidentiary claim.

In his brief, the defendant acknowledged that he did not object to the admissibility of the horizontal gaze nystagmus testimony before the trial court and, thus, did not preserve his claim for review. Therefore, the defendant requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[12] or, alternatively, the plain error doctrine. See Practice Book § 60-5.

[12] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following

At oral argument before this court, the defendant conceded that his claim was an unpreserved evidentiary claim. This court previously has recognized that "[e]videntiary claims do not merit review pursuant to . . . *Golding* . . . because they are not of constitutional magnitude." *State* v. *Cromety*, 102 Conn. App. 425, 431, 925 A.2d 1133, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). "[O]nce identified, unpreserved evidentiary claims . . . will be summarily dismissed." *State* v. *Golding*, supra, 213 Conn. 241. Therefore, we decline to afford this claim *Golding* review.

With regard to the defendant's request for plain error review, the defendant made only one passing reference to the plain error doctrine in his brief and requested that this court undertake plain error review if it determined that his third claim was an unpreserved evidentiary claim. The defendant, however, did not analyze the claim of plain error and, aside from a reference to Practice Book § 60-5, did not cite any legal authority to support his request for plain error review. Therefore, we decline to consider his claim under the plain error doctrine.[13] *State* v. *Bourguignon*, 82 Conn. App. 798, 801, 847 A.2d 1031 (2004) ("[w]e will not engage in . . .

conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[13] We note that even if the defendant had briefed his claim of plain error adequately, this case is not one of those "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). In the present case, the jury heard an abundance of other evidence, including the testimony of Kilkenny, Tunney and Zimnoch along with the defendant's own admissions, from which it reasonably could have concluded that the defendant was intoxicated within the meaning of § 14-227a (a) (1).

plain error review on the basis of . . . an inadequate brief" [internal quotation marks omitted]).

The judgment is affirmed.

In this opinion the other judges concurred.