# STATE OF CONNECTICUT *v.* TIMOTHY POPELESKI
## (SC 18250)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 8—officially released May 26, 2009

*James J. Ruane*, special public defender, with whom, on the brief, were *James O. Ruane* and *Teresa M. Dinardi*, special public defenders, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony J. Spinella*, assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant, Timothy Popeleski, appeals from the judgment of conviction, rendered after a jury trial, of one count each of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1), reckless driving in violation of General Statutes § 14-222 (a), and evading responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b).[1] On appeal,[2] the defendant claims that the trial court improperly: (1) excused a juror who had had a dispute with a judicial marshal; and (2) admitted evidence regarding the horizontal gaze nystagmus[3] test that had been administered to the defendant prior to his arrest. We conclude that the trial court did not abuse its discretion in excusing the juror and properly admitted the evidence regarding the horizontal gaze nystagmus test that was administered to the defendant. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the early morning hours of December 18, 2005, after consuming drinks at several bars in Hartford, the defendant drove his pickup truck to Manchester. As the defendant was going around a corner, traveling at a high rate of speed, he lost control of his vehicle, which

---

[1] The defendant was also charged in a part B information with having previously been convicted of two counts of the crime of operating a vehicle while under the influence of intoxicating liquor or drugs, therefore subjecting him to the enhanced penalties under § 14-227a (g). After the jury returned its verdict of guilty on the first part of the information, the defendant pleaded guilty to the charge in the part B information.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[3] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 339 n.8, 757 A.2d 561 (2000).

jumped the curb and hit a utility pole. As a result of the collision with the utility pole, the vehicle's front bumper fell off and the front wheel on the driver's side of the vehicle was bent underneath the wheel well. A pedestrian who was outside walking her dog was standing approximately ten feet from the utility pole at the time of the collision. The defendant then backed his truck away from the utility pole and hurriedly drove away.

As a result of the damage to the vehicle caused by the collision, the defendant was able to drive it only approximately one-half mile, and then was forced to stop. Shortly thereafter, the police arrived. The defendant initially refused to exit the vehicle, but eventually he relented. Once he exited the vehicle, the police officers smelled the odor of alcohol on the defendant's breath and body, and observed that his eyes were bloodshot and glassy, that his speech was slurred, and that he was swaying and unstable on his feet. The defendant also was verbally combative.

Thereafter, a Manchester police officer administered three field sobriety tests to the defendant: the horizontal gaze nystagmus test, the walk and turn test,[4] and the one leg stand test.[5] The defendant performed up to state standard on the one leg stand test, however, he failed both the horizontal gaze nystagmus test and the walk and turn test. As a result, the police arrested the defendant and charged him with operating a motor vehicle while under the influence of intoxicating liquor or drugs

[4] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 340 n.10, 757 A.2d 561 (2000).

[5] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 340 n.11, 757 A.2d 561 (2000).

in violation of § 14-227a (a) (1), reckless driving in violation of § 14-222 (a), and evading responsibility in the operation of a motor vehicle in violation of § 14-224 (b).

The case was tried to a jury, which returned a verdict of guilty on all three offenses. The trial court then rendered judgment in accordance with the jury's verdict. This appeal followed.

The defendant first claims that the trial court improperly dismissed a juror who had engaged in an argument with a judicial marshal. Specifically, the defendant asserts that the trial court's dismissal of a juror violated his right to an impartial jury under the state and federal constitutions. The following additional facts and procedural history are necessary for the resolution of the defendant's first claim. After the presentation of evidence at trial had begun, one of the jurors selected to sit on the case attempted to bring a knife into the courthouse and was stopped at the metal detector by a court marshal. When the marshal confronted him about it, the juror "[gave] her a hard time . . . ." After the testimony of the state's third witness, the matter regarding the juror came to the attention of the trial court, which questioned the juror about it. While admitting that the marshal was just "doing her job," the juror nevertheless described the marshal as "very vicious," said that he "resented [the] authority" of the marshal, and told the court, "I don't need to be treated like a criminal." Thereafter, the trial court heard oral argument from the parties' counsel about whether the juror should be dismissed from the jury. The trial court found that the juror's hostile attitude during questioning by the court was "a little short of contempt for the court" and removed the juror because she was "concerned about his disruptive behavior."

We first set forth the standard of review. "The trial court is vested with wide discretion in determining the

competency of jurors to serve. . . . [T]he exercise of [the trial court's] discretion will not constitute reversible error unless it has clearly been abused or harmful prejudice appears to have resulted." (Internal quotation marks omitted.) *State* v. *Ross*, 269 Conn. 213, 241, 849 A.2d 648 (2004). In the present case, the trial court determined that the actions of the juror toward the marshal and the responses of the juror to the trial court's questions when asked about the incident with the marshal were disruptive and almost contemptuous. After reviewing the record, we conclude that the trial court did not abuse its discretion in discharging the juror due to his inappropriate behavior toward the marshal and his rude response to questioning by the trial court regarding this incident.

The defendant also claims that the trial court improperly admitted evidence of the results of the horizontal gaze nystagmus test that had been administered to the defendant prior to his arrest because it had not been administered according to the "strict" standards established by the National Highway Traffic Safety Administration (traffic safety administration). The following additional facts and procedural history are necessary to our resolution of the defendant's second claim on appeal. Prior to trial, the defendant filed a motion in limine to exclude evidence of the administration of the horizontal gaze nystagmus test administered to him prior to his arrest, as well as the results of that test. After reviewing the motion, the trial court denied it, determining that the defendant's claim that the test had not been performed in accordance with the traffic safety administration's standards went to the weight of the evidence, not to its admissibility. After the police officer who performed the test testified before the jury, the defendant filed a motion to strike the testimony of the officer with regard to the horizontal gaze nystagmus test. The trial court denied the motion to strike.

We first set forth the standard of review. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence . . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Furthermore, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 723–24, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

Although this court never has addressed the standards required for the admissibility of evidence of a horizontal gaze nystagmus test, the Appellate Court has "consistently expressed [the] view that horizontal gaze nystagmus evidence is the type of scientific evidence that may mislead a jury in the absence of a proper foundation . . . [and has] enunciated [a] three part test that must be satisfied before such evidence is admissible. That test requires that the state (1) satisfy the criteria for admission of scientific evidence, (2) lay a proper foundation with regard to the qualifications of the individual administering the test and (3) demonstrate that the test was conducted in accordance with relevant procedures." (Citation omitted.) *State* v. *Balbi*, 89 Conn. App. 567, 573–74, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005). In addition, the Appellate Court has concluded that because the horizontal gaze nystagmus evidence satisfies the requirements of *State*

v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998),[6] the trial court is not required to hold a *Porter* hearing in every case in which horizontal gaze nystagmus evidence is proffered. *State* v. *Balbi*, supra, 576–77. "The state still must lay a proper foundation with regard to the qualifications of the individual administering the test and demonstrate that the test was conducted in accordance with generally accepted standards such as those specified in the relevant sections of the [traffic safety administration's] manual." Id., 577.

In the present case, the defendant asserts that the trial court improperly admitted the evidence of the horizontal gaze nystagmus test administered to the defendant because it had not been administered in accordance with the protocol established by the traffic safety administration. We disagree. At trial, the police officer who had administered the test to the defendant testified that she had been trained in administering field sobriety tests and interpreting the results of those tests, and that she had received advanced training from the traffic safety administration. The evidence presented at trial also demonstrated that the officer had complied substantially with the standards of the traffic safety administration for administering the horizontal gaze nystagmus test. In *State* v. *Commins*, 83 Conn. App. 496, 499, 850 A.2d 1074 (2004), aff'd, 276 Conn. 503, 886

---

[6] In *State* v. *Commins*, 83 Conn. App. 496, 504–505, 850 A.2d 1074 (2004), aff'd, 276 Conn. 503, 886 A.2d 824 (2005), the Appellate Court affirmed the trial court's conclusion that the horizontal gaze nystagmus test meets the first option for admissibility under *Porter*, namely that the test and its underlying methodology is generally accepted in the scientific community. The Appellate Court in *Commins* also concluded that the evidence adduced further satisfied the other factors enumerated in *Porter* for the assessment of the validity of scientific evidence, namely that "(1) the methodology has been tested and subjected to peer review, (2) there is a known or potential rate of error, (3) [the witness testifying at the *Porter* hearing] was credible and (4) the methodology is explainable to the jury in a manner from which it reasonably could draw its own conclusions." Id., 505.

A.2d 824 (2005), the Appellate Court explained: "To administer the [horizontal gaze nystagmus] test, the officer positions a stimulus approximately twelve to eighteen inches away from and slightly above the subject's eyes. The stimulus, usually a pen or the officer's finger, is then moved slowly from the midline of the nose to maximum deviation, the farthest lateral point to which the eyes can move to either side. The officer observes the subject's eyes as he tracks the stimulus and looks for six clues, three for each eye, to determine whether the subject passes or fails the test. The officer looks for (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) the onset of nystagmus at an angle less than forty-five degrees in relation to the center point. A finding of four clues indicates failure of the test and is a sign of intoxication." In the present case, the police officer testified that she had held her pen twelve inches from the defendant's eyes, moved it from side to side and checked for: (1) lack of smooth pursuit; (2) nystagmus at maximum deviation; and (3) nystagmus prior to forty-five degrees. The police officer further testified that she had noticed five clues of intoxication and concluded that the defendant had failed the test and was intoxicated. The defendant was given ample opportunity on cross-examination to undercut the weight of this evidence by attempting to show that the officer had not complied with the standards of the traffic safety administration for administering the test. We therefore conclude that the trial court did not abuse its broad discretion in admitting the evidence of the horizontal gaze nystagmus test and its results in the present case.

The judgment is affirmed.