STATE OF CONNECTICUT *v.* MARK A. WEED
(AC 28909)

Bishop, Robinson and Foti, Js.

sustained the trial court's action if proper grounds exist to support it" [internal quotation marks omitted]).

Argued October 28—officially released December 29, 2009

*James J. Ruane*, with whom, on the brief, were *James O. Ruane* and *Sean P. Barrett*, certified legal intern, for the appellant (defendant).

*Raheem L. Mullins,* deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Yamini Menon,* former deputy assistant state's attorney, for the appellee (state).

BISHOP, J. The defendant, Mark A. Weed, appeals from the judgment of conviction, rendered following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a. On appeal, the defendant claims that the court improperly (1) admitted his request for counsel as evidence of his refusal to submit to a breath test, (2) instructed the jury regarding consciousness of guilt and (3) admitted evidence of standardized field sobriety tests that had been administered to him prior to his arrest. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 7, 2005, the defendant spent the day, from approximately 1 p.m. to 7 p.m., on his boat on Long Island Sound with his friend, Chris Rysz. Over the course of the afternoon, they consumed a twelve pack of beer, the defendant drinking four beers, Rysz drinking eight. The defendant brought the boat back to his house in Norwalk, where he and Rysz stayed for about one hour, and then the defendant drove Rysz to his house in Danbury. To bring Rysz home, the defendant traveled on Route 7, which is a four lane public roadway with two lanes for northbound travel and two for southbound travel. As he was heading north, the defendant noticed that there was construction taking place on the southbound side of Route 7.

After he dropped Rysz off, the defendant headed south on Route 7 to return to Norwalk. Approaching the construction site from the north, there were warning

signs alerting drivers to use caution. Due to the construction in the left lane, the right lane was the only open lane for travel. Approximately one tenth of a mile before the construction site, there was a three to four foot neon orange reflective sign with a large black arrow pointing to the right, ushering traffic into the right lane. Several three foot high orange cones separated the travel lane from the construction, and there were several signs posted informing drivers that fines would be doubled in this area due to the construction. There were also various yellow lights flashing inside the site, and the site itself was lit with several high powered, generator operated lights that stood approximately twelve to fifteen feet high. Approximately twelve people were working at the construction site. The defendant drove into the wrong lane and crashed into one of the large orange signs. He continued driving, swerving toward the construction site. Officer Peter Trahan of the Wilton police department was stationed at the construction site to ensure safety and visibility, and his police truck, with lights flashing, was parked approximately fifty to seventy-five feet north of the construction site. Trahan had to run into the road to avoid being struck by the defendant's vehicle. The large sign was stuck to the grill of the defendant's truck, and the truck had knocked over one of the traffic cones. After the defendant swerved back into the right lane, Trahan ordered him to drive into a parking lot to the right of the construction site.

When Trahan approached the defendant, who was still in his vehicle, he detected the odor of alcohol and noticed that the defendant's eyes were glassy and glazed over. The defendant told Trahan that he had been on a boat earlier with a friend and that he had consumed two or three beers. Trahan asked the defendant to get out of the vehicle so he could conduct field sobriety testing. Trahan then administered the horizontal gaze

nystagmus test[1] to the defendant. The defendant failed that test. On the basis of the failure of this test, the odor of alcohol and the fact that the defendant had crashed into the construction sign, Trahan concluded that the defendant was intoxicated. Because Trahan was working an off-duty assignment, he radioed police headquarters to request an on-duty officer to complete the field sobriety testing on the defendant.

Shortly thereafter, Officer Diana Papa arrived on the scene to continue the investigation. When Papa approached the defendant, she noted that the defendant's clothes were disheveled, his face was red and he smelled of alcohol. When Papa asked the defendant if he had been drinking, he told her that he had had three or four beers. Papa then told the defendant that she would be conducting some field sobriety tests on him. She informed the defendant that she was going to be administering three tests: the horizontal gaze nystagmus test, the walk and turn test[2] and the one leg stand test.[3] Prior to commencing, Papa ascertained that the defendant was not wearing contact lenses, and she explained each test to the defendant. The defendant indicated that he understood what was required of him

---

[1] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 770 n.3, 970 A.2d 108 (2009).

[2] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 771 n.4, 970 A.2d 108 (2009).

[3] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 771 n.5, 970 A.2d 108 (2009).

to perform each test. The defendant failed all three tests. Papa's supervising officer, Sergeant Thomas Tunney, observed Papa administer the field sobriety tests and testified that she had done so properly. Tunney also testified that the defendant smelled of alcohol. Consequently, Papa placed the defendant under arrest at 10:32 p.m. and transported him to the Wilton police department.

At the police station, Papa informed the defendant that he would have to submit to a breath test and that he had a right to call an attorney before submitting to the test. He also was informed of the ramifications of a refusal to submit to the test. In response, the defendant asked to call an attorney, which he was permitted to do. The defendant first called the law firm of DePanfilis and Vallerie, LLC, where he left a message. He then requested that he be allowed to call his cousin, attorney Alice McQuade, which he did. When she also did not respond to the defendant's telephone call, he was then permitted to call and to speak to his girlfriend. After approximately fifteen minutes from the time Papa first asked the defendant to take a breath test, she asked him again if he would submit to the test. The defendant continued to state that he wanted to speak to an attorney. After he was informed that his continued request for counsel, instead of taking the test, would be deemed a refusal, and was notified of the repercussions of such a refusal, the defendant, nevertheless, persisted in his request for an attorney. Papa finally told the defendant that she had to interpret his failure to submit to the test as a refusal. The defendant never took the test.

Following a jury trial, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a. Thereafter, the defendant entered a plea of nolo contendere on a part B information charging him with having previously committed the offense of operating a motor

vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1) on February 17, 1999. The defendant was sentenced to a term of two years incarceration, execution suspended after six months, 120 days of which was mandatory, and three years probation. This appeal followed.

## I

The defendant first claims that the court improperly admitted his request for counsel as evidence of his refusal to submit to a breath test. The defendant's objection to this evidence at trial was based solely on his contention that the admission into evidence of his request to speak with counsel unreasonably burdened his constitutional right to counsel. It is well settled, however, and the defendant conceded at oral argument before this court, that he had no such constitutional right to counsel at that juncture. See *Altschul* v. *Salinas*, 53 Conn. App. 391, 394–95, 730 A.2d 1171, cert. denied, 249 Conn. 931, 761 A.2d 751 (1999). We note, as well, that the record fairly reflects that the state introduced evidence of the defendant's continuing request for counsel not as proof that he refused to take the test but simply as the factual underlayment to his refusal. As aptly noted by the state, a refusal to take a breath test need not be explicit but may occur through conduct. *Tompkins* v. *Commissioner of Motor Vehicles*, 60 Conn. App. 830, 832, 761 A.2d 786 (2000). Here, the record is plain and undisputed that the defendant did not agree to submit to the breath test in the approximately fifteen minute interval between the time he was asked to take the test and when the police deemed his failure to take the test a refusal. Accordingly, the defendant's claim must fail.

## II

The defendant next claims that the court improperly instructed the jury regarding consciousness of guilt.

Specifically, the defendant claims that the court improperly instructed the jury that the refusal to submit to a breath test could be considered evidence of consciousness of guilt.[4] We are not persuaded.

In instructing the jury, after the court gave general instructions regarding inferences[5] and explained the elements of the charged offense, the court instructed the jury that it could infer consciousness of guilt from the defendant's refusal to submit to the breath test. The court instructed the jury as follows: "[I]n this case, the state claims that—and has offered evidence, that the defendant refused to submit to a blood, breath or a urine test. Now, under our law, in the circumstances of this case, the defendant is deemed to have given an implied consent to the taking of a blood, breath or urine test at the option of the police officer. Again, the selection of the type of test is for the officer to make. Here, there is evidence that the officer selected a breath test. The issue, then, is not whether the defendant refused any and all tests but whether he refused the selected test. The word refuse is defined as, to show or express unwillingness to do or to comply with. Here, it means to show or express unwillingness to do or comply with the directive of the officer to take a particular test: the breath test. Now, whether the defendant

[4] To the extent that the defendant's claim on appeal focuses on his assertion that the invocation of his constitutional right to counsel cannot trigger an inference of consciousness of guilt, we need not address that aspect of his claim because no such constitutional right exists at the time of the administration of the breath test.

[5] The court instructed: "You may draw reasonable inferences from the established facts in this case. The inferences which you draw, however, must not be from a guess upon the evidence, but they must be from a fact or facts which the evidence has established. In drawing inferences from established facts, you should use your reason and your common sense. The inferences which you draw must be logical and reasonable. And any facts, whether inferred or proven directly, which are essential to proof of an element of the offense charged must be proved beyond a reasonable doubt."

refused the breath test remains a question of fact for you to decide, in accordance with my instructions.

"If you find that the defendant did refuse a breath test, you may draw inferences from that refusal in accordance with my instruction on inferences I gave previously, and one of these inferences concerns the legal principle of consciousness of guilt. In any criminal trial, it's permissible for the state to show that conduct of the defendant after the time of the alleged offense may fairly have been influenced by the criminal act. That is, the conduct shows a consciousness of guilt. The defendant's conduct in refusing a breath test, if you find that he did refuse a breath test, might be offered because such conduct tends to show a consciousness of guilt. It does not, however, raise a presumption of guilt. It is up to you as judges of the facts to decide whether the conduct of the defendant reflects consciousness of guilt and to consider such in your deliberations in conformity with these instructions. If you find that the defendant did refuse to submit to such a test, you may make any reasonable inference that follows from that fact. In this regard, you should refer and apply to—apply my previous instruction regarding the drawing of inferences. To be clear, though, the state does not have to prove a refusal as an element of the offense of driving under the influence. It simply permits you to draw inferences in accordance with my earlier instructions. Again, ladies and gentlemen, you may consider all the evidence you saw and heard concerning the defendant's alleged refusal to submit to the selected test."

The defendant objected to the court's instruction regarding consciousness of guilt on the grounds that the instruction did not inform the jury that inferences should be based on probabilities, not possibilities, the legislature has preempted such an instruction by explicitly stating in the statute that the jury can draw any

reasonable inference from the refusal if it is found and no adverse inference could be drawn from the assertion of a constitutional right.

During its deliberations, the jury sent a note to the court, asking: "[Is] establishing consciousness of guilt in and of itself sufficient legal grounds to return a guilty verdict?" In response to the jury's question, the court further instructed the jury as follows: "Establishing consciousness of guilt is not, in and of itself, sufficient grounds—legal grounds—to return a guilty verdict. If you find [that] the defendant refused the breath test— and that is a question of fact for you—you may draw any reasonable inference from that. One of these inferences relates to the defendant's consciousness of guilt, but it is not a presumption of guilt. It is not even a required inference. It is a permissive inference, which you may draw in accordance with my previous instructions concerning the drawing of inferences." The defendant again took exception to the court's instruction regarding consciousness of guilt.

"It has been stated numerous times that consciousness of guilt issues are evidentiary and not constitutional in nature. . . . When a challenge to a jury instruction is not of constitutional magnitude, the charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 106 Conn. App. 238, 253, 941 A.2d 989, cert. denied, 287 Conn. 903, 947

A.2d 343 (2008). "The decision to give a consciousness of guilt instruction is left to the sound discretion of the trial court." *State* v. *Hinds*, 86 Conn. App. 557, 565, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005).

The issue of whether, in a criminal prosecution for a violation of § 14-227a, evidence that the defendant refused to submit to a breath test provides a sufficient basis for a consciousness of guilt charge has not been directly addressed in our appellate case law.[6] Section 14-227a (e) provides that "the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a . . . breath . . . test."[7] In that statute, the legislature has provided for a permissive inference that the jury may draw from evidence of the fact that the defendant refused to submit to a breath test.

Here, consistent with the statutory language of § 14-227a (e), in instructing the jury on consciousness of

[6] In *State* v. *Merritt*, 36 Conn. App. 76, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995), this court declined to review a similar claim on the ground that it was not raised before the trial court. Id., 96. In *State* v. *McCarthy*, 63 Conn. App. 433, 775 A.2d 1013, cert. denied, 258 Conn. 904, 782 A.2d 139 (2001), the defendant was charged with operating a motor vehicle while under the influence of alcohol and assault in the second degree with a motor vehicle, and the trial court instructed the jury that consciousness of guilt could be inferred from the defendant's refusal to submit to a breath test. Id., 438. The defendant did not claim that the instruction was improper under the circumstances of the case but, rather, assailed the language and the applicability of the instruction to the assault with a motor vehicle charge. Id. This court affirmed the judgment of the trial court. Id., 442.

[7] General Statutes § 14-227a (e) provides: "Evidence of refusal to submit to test. In any criminal prosecution for a violation of subsection (a) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

guilt, the court did not refer to the defendant's request to contact an attorney but merely instructed the jury that if it found that the defendant had refused to submit to the breath test, then it could take that refusal as evincing a consciousness of guilt. The court instructed the jury that only if it found that the defendant refused to submit to the test, then the jury "may make any reasonable inference that follows from that fact." The court further advised the jury that it should refer to the court's earlier instruction regarding drawing inferences from circumstantial evidence. In addition, when the court recharged the jury as to consciousness of guilt, it reiterated that consciousness of guilt is a permissive and not a required inference. The court clearly stated that it was the jury's duty to determine whether the defendant's conduct tended to show a consciousness of guilt and that, even if the jury so concluded, such evidence did not raise a presumption of guilt but, rather, simply may be used by the jury in its deliberations. Thus, when read as a whole, the court's instruction properly informed the jurors that the defendant's consciousness of guilt, found by the jury, was a permissive inference that it could draw from his conduct. Because the court repeatedly explained to the jury that consciousness of guilt was only a *permissive* inference that it could draw only if it determined that the defendant had refused to submit to the breath test, the court's instruction was well within the parameters of § 14-227a. Accordingly, we conclude that the court's instruction as to consciousness of guilt was in accordance with the law and that the court did not abuse its discretion.

Even if we were to conclude that the court's instruction regarding consciousness of guilt was improper, the defendant has failed to prove that the instruction was harmful. "[W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An

instructional impropriety is harmful if it is likely that it affected the verdict." (Internal quotation marks omitted.) *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 656, 935 A.2d 1004 (2007). Here, there was ample evidence that the defendant was under the influence of alcohol aside from his refusal to take the breath test. The defendant drove into the wrong lane and crashed into a large reflective construction sign and several traffic cones. He admitted to drinking earlier in the day, failed the field sobriety tests and smelled of alcohol. In light of this additional evidence, we cannot conclude that the instruction, even if erroneous, likely affected the verdict.

## III

The defendant finally claims that the court improperly admitted evidence of his performance on standardized field sobriety tests because they were not administered according to recognized protocol. Specifically, the defendant claims that the court improperly admitted evidence of the horizontal gaze nystagmus test that was administered by Papa to the defendant and was not in accordance with the standards set forth by the National Highway Traffic Safety Administration (traffic safety administration). We disagree.

The following additional facts and procedural history are necessary to our resolution of the defendant's claim. Prior to trial, the defendant filed a motion to suppress evidence of the standardized field sobriety tests administered to him prior to his arrest. Following a hearing on the defendant's motion, the court denied it, determining that the traffic safety administration standards are not exclusive and that the tests were administered in accordance with state and local standards. The defendant renewed his objection when the evidence of these tests was presented to the jury. The court overruled the defendant's objection.

"[T]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence, including issues of relevance and the scope of cross-examination. . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State v. Saucier*, 283 Conn. 207, 236–37, 926 A.2d 633 (2007) (*Norcott, J.*, concurring in part).

This court has "consistently expressed [the] view that horizontal gaze nystagmus evidence is the type of scientific evidence that may mislead a jury in the absence of a proper foundation . . . [and has] enunciated [a] three part test that must be satisfied before such evidence is admissible. That test requires that the state (1) satisfy the criteria for admission of scientific evidence, (2) lay a proper foundation with regard to the qualifications of the individual administering the test and (3) demonstrate that the test was conducted in accordance with relevant procedures." (Citation omitted.) *State v. Balbi*, 89 Conn. App. 567, 573–74, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005). In addition, this court has concluded that because the horizontal gaze nystagmus evidence satisfies the requirements of *State v. Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), the trial court is not required to hold a *Porter* hearing in every case in which horizontal gaze nystagmus evidence is proffered. *State v. Balbi*, supra, 576–77. Rather, "[t]he state still

must lay a proper foundation with regard to the qualifications of the individual administering the test and demonstrate that the test was conducted in accordance with generally accepted standards such as those specified in the relevant sections of the [traffic safety administration's] manual." Id., 577.

Here, the defendant does not claim that Papa was unqualified to administer the field sobriety tests. The defendant contends, instead, that the court improperly admitted the evidence of the horizontal gaze nystagmus test administered to him on the sole ground that Papa did not administer it in accordance with the protocol established by the traffic safety administration. There is no authority, however, for the defendant's claim that the horizontal gaze nystagmus test must be administered in accordance with the standards set forth by the traffic safety administration. In *State* v. *Popeleski*, 291 Conn. 769, 970 A.2d 108 (2009), our Supreme Court affirmed the trial court's determination that the defendant's claim that the horizontal gaze nystagmus test had not been performed in accordance with the traffic safety administration's standards pertained to the weight of the evidence, not its admissibility. Id., 776. In affirming the judgment of the trial court, the Supreme Court implicitly rejected the defendant's claim that this field sobriety test must be administered in accordance with the protocols of the traffic safety administration.

Because the claim in *Popeleski* is parallel to the claim made by the defendant in this case, this case is controlled by the Supreme Court's holding in *Popelseki*. Like the arresting officer in *Popeleski*, Papa testified that she had been trained in administering field sobriety tests and interpreting the results of those tests. Papa testified that she received her training through the Wilton police department and the Connecticut police academy.

Additionally, Papa's testimony demonstrated that her administration of the horizontal gaze nystagmus test had complied substantially with the standards already accepted by this court. In *State* v. *Commins*, 83 Conn. App. 496, 504–505, 850 A.2d 1074 (2004), aff'd, 276 Conn. 503, 886 A.2d 824 (2005), this court explained: "To administer the [horizontal gaze nystagmus] test, the officer positions a stimulus approximately twelve to eighteen inches away from and slightly above the subject's eyes. The stimulus, usually a pen or the officer's finger, is then moved slowly from the midline of the nose to maximum deviation, the farthest lateral point to which the eyes can move to either side. The officer observes the subject's eyes as he tracks the stimulus and looks for six clues, three for each eye, to determine whether the subject passes or fails the test. The officer looks for (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) the onset of nystagmus at an angle less than forty-five degrees in relation to the center point. A finding of four clues indicates failure of the test and is a sign of intoxication." Here, Papa testified that she used her pen as the stimulus, placed it in front of the defendant's eyes and moved it from side to side and checked for: (1) lack of smooth pursuit, (2) nystagmus at maximum deviation and (3) nystagmus prior to forty-five degrees. Papa testified that she had noticed six clues of intoxication and concluded that the defendant had failed the test and was intoxicated. Here, as in *Popeleski*, the defendant was given ample opportunity on cross-examination to undermine the weight of this evidence by attempting to show that the officer had not complied with the standards of the traffic safety administration for administering the test. We, therefore, conclude that the court did not abuse its discretion in admitting the evidence of the horizontal gaze nystagmus test and its results.

The judgment is affirmed.

In this opinion the other judges concurred.