# STATE OF CONNECTICUT *v.* MARK ANDREW COYNE
## (AC 29390)

Bishop, Robinson and Foti, Js.

Argued October 28, 2009—officially released January 12, 2010

*Jonathan R. Sills*, with whom, on the brief, was *Steven A. Tomeo*, for the appellant (defendant).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Dina Urso*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Mark Andrew Coyne, appeals from the judgment of conviction, rendered following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2005) § 14-227a (a) (1). See footnote 5 of this opinion. On appeal, the defendant asserts a number of evidentiary claims and also claims that the evidence was insufficient to sustain his conviction. Specifically, the defendant claims that the court improperly (1) denied his motion to preclude evidence of the horizontal gaze nystagmus test[1] administered to him by the police, (2) denied his motion to

---

[1] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 770 n.3, 970 A.2d 108 (2009).

preclude any evidence regarding the National Highway and Traffic Safety Administration's methods, procedures, training and scoring on standardized field sobriety tests, (3) admitted the results of the standardized field sobriety tests he took, which were not in compliance with the National Highway and Traffic Safety Administration standards and (4) admitted evidence of his refusal to submit to a chemical breath test. Finally, as noted, the defendant claims that the guilty verdict was not supported by sufficient evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the early morning hours on December 2, 2005, Greenwich police Officer Kristy Purzycki was on patrol when she noticed the defendant traveling eastbound on Route 1, also known as East Putnam Road, in a Chevrolet model pickup truck. While traveling behind the defendant's vehicle, Purzycki observed the truck speed up and slow down for no apparent reason. Purzycki also saw the defendant's vehicle drift from the right travel lane to the left lane without using a directional signal. As Purzycki was following the defendant, she saw him turn right into a gasoline station lot, rolling over a bright orange traffic cone in the process. He then exited the other side of the gasoline station lot and, without signaling, turned onto Sheeps Hill Road, back in the general direction from which he had come. Purzycki turned her vehicle around to follow the defendant, and after observing him continue to swerve between lanes, she initiated a traffic stop. The defendant, without signaling, drove into an empty parking lot.

After effectuating the stop, Purzycki approached the driver's side window of the defendant's truck and explained to the defendant why she had stopped him. The defendant smelled of alcohol, appeared confused and did not respond to Purzycki. His eyes were bloodshot and glossy. When questioned, the defendant stated

that he could not remember where he was coming from or if he had had anything to drink. His speech was slurred during this exchange. When Purzycki asked him for his license, registration and proof of insurance, the defendant fumbled around in his pockets and was only able to produce his registration, which was located in the glove compartment. Purzycki then asked the defendant to get out of his truck in order to administer field sobriety tests. The defendant appeared unsteady when getting out of his truck and swayed while Purzycki was explaining the testing procedures.

First, Purzycki explained and then administered the horizontal gaze nystagmus test, which indicated to her that the defendant had consumed alcohol. Next, Purzycki administered the walk and turn test.[2] Before beginning the test, Purzycki explained it, demonstrated how it was to be done and asked the defendant if there was any reason he would be unable to perform the test. The defendant did not indicate any reason that he could not do so. Purzycki indicated that prior to commencing the test, the defendant was unable to maintain the starting position. While endeavoring to complete the test, the defendant was unable to touch heel to toe, stopped to steady himself, stepped off the line, raised his arms and stopped counting aloud, all contrary to Purzycki's instructions. Last, Purzycki attempted to administer the one leg stand test[3] to the defendant. She explained and demonstrated the test, but the defendant indicated that because of a right ankle injury he could not perform

---

[2] The walk and turn test requires the subject to walk, with his hands at his sides, heel to toe along a straight line for nine paces, pivot and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine. *State* v. *Popeleski*, 291 Conn. 769, 771 n.4, 970 A.2d 108 (2009).

[3] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 771 n.5, 970 A.2d 108 (2009).

the test. Although Purzycki reminded the defendant that he could do the test with his other foot, he declined altogether to perform this test.

Also present during the field sobriety testing was Greenwich police Officer Pierre Corticelli, who had arrived as backup shortly after Purzycki had initiated the traffic stop. Corticelli was familiar with the defendant from a prior occasion and observed that the defendant was acting very differently than in their previous encounter. Corticelli testified that the defendant's cognitive ability was "very much impaired," that he appeared confused even by simple questions, had slower than normal reaction time, his breath smelled of alcohol, his eyes were glassy and bloodshot, and that he had difficulty maintaining his balance. Corticelli observed Purzycki administer the field sobriety tests and concurred in her conclusions.

Following the defendant's refusal to complete the one leg stand test, he was placed under arrest, read his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and taken to the Greenwich police department. The defendant read and signed a notice of rights form and was allowed to use a telephone to contact an attorney. When questioned, the defendant was able to remember when and what he last ate, when and what medications he had taken that morning but stated that he did not remember when he started and stopped drinking, what he had been drinking, how much he drank or where he had been drinking. After the defendant was read the implied consent advisory and asked to submit to a breath test,[4] he refused.

[4] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional

At trial, defense witness Clark Miller, a nonpracticing podiatrist working for a "forensic gait analysis group," testified that the defendant had come to him for a gait analysis in connection with the drunken driving charge. This assessment consisted of visual analysis, field sobriety testing and a computerized analysis. Miller testified that on the basis of the results of this analysis, he concluded that the defendant had a problem with his gait that would prevent him from performing the field sobriety tests. Miller was not able, however, to connect the defendant's gait issues with the inculpatory results of the horizontal gaze nystagmus test, the defendant's inability to drive or to count properly, his bloodshot and glassy eyes, his memory, his confusion or the odor of alcohol on his breath. Following the conclusion of evidence, the jury returned a guilty verdict, and, on the same day, the defendant pleaded nolo contendere to a part B information charging him as a second time offender. On October 17, 2007, the defendant was sentenced to two years imprisonment, execution suspended after 145 days and three years probation. The defendant now appeals from the judgment of conviction.

On appeal, four of the five claims raised by the defendant allege that the court improperly admitted certain

rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test . . . and that evidence of any such refusal shall be admissible in accordance with subsection (e) of section 14-227a and may be used against such person in any criminal prosecution, refuses to submit to the designated test, the test shall not be given . . . .

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . ."

evidence. "The applicable standard of review for evidentiary challenges is well established. We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 396, 963 A.2d 956 (2009). "Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." (Internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 158, 971 A.2d 676 (2009). "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006). "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Beavers*, supra, 396–97.

In this instance, we need not discuss the merits of any of the defendant's evidentiary claims because the defendant has failed, completely, to provide any meaningful analysis of harm. Thus, even if we were to assume, without deciding, that the court improperly admitted all of the challenged evidence, the defendant's brief has failed to elucidate how any of the rulings at issue were harmful. Absent any analysis regarding harm, we cannot conclude that the admission of the subject evidence had any bearing on the trial's outcome. See *State* v. *Gonzalez*, 106 Conn. App. 238, 249, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008); *State* v. *LaVallee*, 101 Conn. App. 573, 579, 922 A.2d 316, cert. denied, 284 Conn. 903, 931 A.2d 267 (2007); *Bicio* v. *Brewer*, 92 Conn. App. 158, 171–72, 884 A.2d 12 (2005).

The defendant claims that the evidence was insufficient to sustain the judgment of conviction. Specifically, the defendant argues that once the allegedly improperly admitted evidence is eliminated from consideration, the remaining evidence is insufficient to support a finding of guilt. The defendant's analysis is misguided.

The standard governing our review of sufficiency of evidence claims is well established. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Cox*, 293 Conn. 234, 245, 977 A.2d 614 (2009). "[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proven beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Calabrese*, 116 Conn. App. 112, 119, 975 A. 2d 126, cert. denied, 293 Conn. 933, 981 A.2d 1076 (2009). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Cox*, supra, 245. We also note that our

"sufficiency review does not require initial consideration of the merits of [the defendant's evidentiary claims] . . . . Claims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error." (Internal quotation marks omitted.) *State* v. *Calabrese*, supra, 118–19.

Because our review requires us to consider all of the evidence presented at trial, irrespective of any alleged impropriety, we reject the defendant's invitation to consider the sufficiency of only the evidence he concedes was admitted properly. As noted, to evaluate the sufficiency of the evidence presented, we assess all the evidence admitted at trial to determine whether the state produced sufficient evidence to prove each of the required elements under General Statutes (Rev. to 2005) § 14-227a (a) (1). In this instance, for the jury to have found the defendant guilty beyond a reasonable doubt of violating this statute, it had to find that he operated a motor vehicle, on a public highway and that he did so while under the influence of intoxicating liquor.[5] The defendant does not contend that the state failed to produce sufficient evidence that he was operating a motor vehicle on a public road; rather, he claims only that the state failed to prove that he was under the influence of intoxicating liquor. The facts do not support such a conclusion.

At trial, the jury heard testimony describing the defendant's erratic driving, including drifting between travel lanes, turning without signaling, driving over a traffic cone, failing to maintain a consistent speed and making

[5] General Statutes (Rev. to 2005) § 14-227a (a) (1) was amended by Public Acts 2006, No. 06-147, and the requirement that the state prove the element that the motor vehicle was operated on a public highway was removed. Because the defendant was arrested prior to this change in the law, however, the state was required to produce evidence for each element of the statute as it existed in 2005.

a U-turn despite being familiar with the area.[6] There was also testimony that upon being stopped, the defendant smelled of alcohol, appeared confused, swayed back and forth, had bloodshot and glassy eyes, was initially unresponsive, slurred his speech when he did speak, had slow reaction time and fumbled around when looking for his license and registration. The police testified that the defendant either failed or declined to take the field sobriety tests. He failed both the horizontal gaze nystagmus and the walk and turn tests, and he refused to perform the one leg stand test. Finally, once at the police station, he refused to submit to a Breathalyzer test. On the basis of the totality of this evidence, we conclude that there was ample evidence on which the jury could have found beyond a reasonable doubt that the defendant was guilty of operating a motor vehicle while under the influence of intoxicating liquor.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Purzycki testified that when the defendant turned into the gasoline station and drove out in the direction that he had just come from, she thought that he might be trying to avoid her. The jury could reasonably have considered this act as evidence of consciousness of guilt.